## POSEY AND COFFEE, Ex'rs, v. THE DECATUR BANK.

1. The six months which elapse after the granting letters testamentary, or of administration, are not to be computed in ascertaining whether the period prescribed by the statute of limitations as a bar, is complete.

2. A statement in writing, describing a bill of exchange by its date, amount, and the character each party on the bill bears in relation to it, and when, and where payable, with the addition that the holder looks to the estate of a particular person for payment, is, if presented to the personal representative of the estate, a sufficient presentation, without producing the original bill.

3. An agreement entered into by a bank, the holder of a bill of exchange, with the acceptor, that if the bill is not paid at maturity, his credit shall not suffer in bank, will discharge an indorser on the bill, who has no knowledge of, and does not consent to the arrangement. But where the indorser has been fully indemnified by the drawer, for whose use the bill was made, indorsed and accepted, he could not avail himself of the want of notice of the dishonor of the bill, or of an arrangement between the holder, and acceptor, which would otherwise have discharged him from liability to the holder.

4. Parol evidence is admissible to show, that a particular bill of exchange was intended to be secured by a deed of trust, though generally, or improperly described in the deed.

5. A suit cannot be maintained at law, on a lost bill of exchange, indorsed in blank, whether lost before, or after its maturity, unless an affidavit of the loss be made before suit is brought, as required by the act of 1828. Nor is the case varied by the fact, that the bill was drawn in sets, consisting of first and second, and that the first only, on which the protest was made, is lost, and the second is produced at the trial.

Error to the County Court of Lauderdale.

THE plaintiff below, declared against the defendants, on a bill of exchange, dated 29th August, 1838, due at nine months, drawn by P. F. Pearson, directed to Kirkman, Abernathy & Hanna, New Orleans, indorsed by Donelson and the defendant's testator, and accepted by the drawees.

The declaration contains several special counts on the bill,

describing it as drawn in sets, the first and second. The defendants pleaded several pleas—the general issue—the statute of limitations of six years—and that the plaintiff did not present said claim to the defendants, as executors, within eighteen months from the time of granting letters testamentary to them as executors. To the plea of the statute of six years, the plaintiff replied, that Andrew J. Hutchings, the defendants' testator, departed this life on the — day of January, 1841. That on the 25th day of January, 1841, letters testamentary, were granted to the defendants, and that the time, from the accruing of the cause of action until the death of Hutchings, and the time from six months after the date of the grant of letters testamentary to the defendants, added together, do not make six years, to which replication the defendants demurred, and the demurrer was overruled, which is assigned as error.

The plaintiff, to the plea of non-presentation of the claim, within eighteen months, replied, taking issue thereon. The issues being submitted to a jury, the plaintiff offered the second of exchange as evidence, and introduced proof, that the first of the set, which was accepted and protested, was lost. The defendants moved the court to dismiss the suit for want of jurisdiction, which motion was overruled. He then objected to the introduction as evidence of the second of exchange—the proof of the loss being, that it was handed to the attorneys of the bank, and it could not be found. The court overruled the objection, and also overruled a motion to dismiss the suit, because the second of the set was read as evidence.

It was shown that the bill was discounted by the bank, for the benefit of Pearson the drawer, and that it was accepted by Kirkman, Abernathy & Hanna, and indorsed by Donelson, and the defendant's testator, for the accommodation of Pearson. That soon after the bill was discounted by the bank, Pearson being in failing circumstances, one of the firm of Kirkman, Abernathy & Hanna, applied to the bank, to have the acceptance cancelled, which was refused. It was then agreed, between the bank, and Kirkman, Abernathy &

Hanna, that the bill should not be sent to the bank in New Orleans, with which the plaintiff did business, but that it should be sent to Martin, Pleasants & Co.; and further, that if the bill should not be paid at maturity, under the peculiar circumstances of the case, the credit of the acceptors should not be injured in the bank.   That in consequence of this agreement, the bill was sent to Martin, Pleasants & Co., and was indorsed to them by the cashier of the bank, as appears from the evidence of the notary, thus, "pay to Martin, Pleasants & Co., or order, S. O. Nelson, cashier," but the defendant's testator was ignorant of this agreement.   The bill was not paid, and the first of the set, which was the one accepted, was protested for non-payment, and notice given to the defendant's testator.   There was also proof tending to show, that if the bill had been sent to the usual agents of the bank in New Orleans, and presented by them, without notice of this agreement, it would have been paid by the acceptors. The plaintiffs also introduced a deed of trust, executed by Pearson, Willis Pope, and Andrew J. Hutchings, the plaintiff's testator, dated the 17th October, 1838, conveying to Willis Pope, by Pearson, his debts, stock of goods, &c. in trust, first to pay the debts of said Pearson, on which Hutchings was liable, and described two bills of about $4,500 each, one discounted in a bank at Nashville, and accepted by Maunsel White & Co., the other accepted by Maunsel White & Co. or Kirkman, Abernathy & Hanna ; the other debts are described, as debts of Pearson extended under the act of 1837, about $5,000, the bill sued on not being described in the deed according to its terms, but the deed expressed, that Hutchings was liable for about $15,000 for him.   The plaintiff then introduced the testimony of Willis Pope, who stated, that it was intended by this deed to protect Hutchings from the debt sued on, and his testimony further tended to show, that the fund was ample, to pay all the debts, that Hutchings was liable for on account of Pearson, and that he had appropriated about $3,000, under Hutchings's directions, to other debts.   The testimony on the plea of non-presentation within eighteen months, was, the bank made out a list of debts, on which Hutchings was liable, and the bill sued on is described, as a bill for $4,000, dated 29th August,

1838, due at nine months from date, drawn by P. F. Pearson, accepted by Kirkman, Abernathy & Hanna, indorsed by Donelson, and defendant's testator   To this testimony the defendants objected.   The objection was overruled.   This is the substance of the various bills of exceptions, and the court was requested to charge the jury, that if they believed, that the plaintiffs made the agreement with the acceptors, that their credit should not be affected in bank, although the bill was protested, that this agreement released the defendant's testator.   Second, that if they believed that but for the agreement, that the credit of the acceptors should not be affected in the bank; if the bill was not protested, that the bill would have been paid at maturity, then the defendant's testator was discharged; both of which charges were refused.

A verdict and judgment being rendered for the plaintiffs, the defendants assign as error, the matters arising upon the bills of exceptions.

L. P. WALKER, for plaintiff in error.

1. The demurrer to plaintiff's replication to the plea of the statute of limitations should have been sustained.   The right of action accrued on the 1st of June, 1839.   The suit was brought on the 8th of July, 1845, being one month more than six years after the accrual of the cause of action.   Hutchings died in January, 1841, and on the 25th of January, 1841, letters testamentary were granted.   The period of six months within which no suit could be brought against his executors expired on the 25th July, 1841.   And the defence relied upon in the replication, to avoid the operation of the statute of limitations, is, that the periods of time from the 1st of June, 1839, to January, 1841, and from 25th July, 1841, to the 8th of July, 1845, do not together amount to six years— in other words, that the statute was suspended from the time that Hutchings died, until six months after the grant of letters testamentary.   But the statute of limitations having begun to run during the life of Hutchings, no subsequent disability can affect its operation.   [8 Ala. 254; 15 Johns. 169; 18 John. 40; 2 Arch. N. P. top p. 153; 1 Stew. 254; Smith on Con. 141, and note; 8 Ala. 388; 4 Meeson & Welsby,

651; 6 Ibid, 351, 356; 2 Mann. & Granger, 414; see also Decatur Bank v. Donelson, adm'x, decided at this term.]

The case cited from 8 Ala. 254, certainly overrules the two previous cases in 2 Porter, 44, and 3 Porter, 247; for the doctrine is there emphatically adopted, that "it is a rule applicable to all statutes of limitation, and to which there is no exception, that where the right of action has once accrued, no subsequent disability will stop or suspend the operation of the statute." [Bank v. Donelson, *supra.*] The language of the statute to which that decision particularly has reference, (Clay's Dig. 327, § 83) is much more favorable to a construction which would allow subsequent disabilities to affect its operation, than that by which this case is governed. [Clay's Dig. 326, § 78.] For in the former, the proviso expressly provides that the time during which the party is infant, lunatic, &c. "shall not be computed as part of the limited period;" while in the latter, the language is without proviso or qualification, "that the action shall be commenced within six years next after the cause of action accrued, and not after." It certainly does not matter whether the disability to sue grows out of express statutory enactment, (as here) or out of the established rules of the common law, (as in the case of infants and insane persons.) For the fact in both cases is the same—the inability is as absolute in the one as the other, and it is totally immaterial, whether it be the result of a *lex scripta* or *non-scripta.*

2. The facts disclosed in the bill of exceptions show, that the court had no jurisdiction. The bill having been lost at the time suit was brought, the filing of an affidavit of its loss, is by our statute (Clay's Dig. 382, § 9,) made a pre-requisite to the bringing of the action, the object of that statute being to furnish information to the defendant of the loss of the instrument. [6 Ala, 843.] Until the passage of the act, *supra,* authorising suit on lost bonds, &c., the jurisdiction of chancery was exclusive. (2 Stew. & P. 251; 1 Story's E. 97 te 103; 2 Greenl. Ev. § 156, note 8; Story on Bills, 448, note 1.) And the proof, as recited in the bill of exceptions, showing that the bill was lost at the time suit was brought, *eo instanti,* the jurisdiction of the court was gone—there hav-

ing been no affidavit of the loss made before the issuance of the writ.

Although all the several sets of the bill collectively form but one bill, yet it is clear the right of action, and the rights of the acceptor or indorser, attach only to the particular number of the set protested.    They are divided into sets, merely for the purpose of providing against loss before presentment. When either one of the set is presented, and either accepted or dishonored, all of the others become mere waste paper, and need not be produced at the trial, as the party accepting is liable only upon the number of the set accepted.    The indorser is entitled to the identical number of the set protested, before he is bound to pay.    [3 Kent, 108 ; 1 Johns. Cases, 107. Downes v. Church, 13 Peters, 205; Wells v. Whitehead, 15 Wend. 527 ; Story on Bills, § 66, 67, 226 ; Beawes 420, 424, § 74; 10 Barn. & Cresw. 449.]

As the right of action attaches to the identical number of the set protested, that number constitutes the bill to be sued upon; and if lost, must be governed by the statute in regard to suits upon lost instruments.

The following passage from Chitty seems to be conclusive of this question : " It is laid down, that unless the drawee has accepted another part of a bill, he may safely pay any part that is presented to him, and that a payment of that part will annul the effect of the others.    But that if one part has been accepted, the payment of another unaccepted part will not liberate the acceptor from liability to pay the holder of the accepted part.    And such acceptor may therefore refuse to pay the bearer of the unaccepted part, and may compel him, if he suggests that he has lost the accepted part, to find caution or sureties against his liability to pay the accepted part. [Chitty on Bills, 175-6; 1 Pardessus, 433.]

Now it is clear that a court of law could not compel the holder to give such sureties, and the remedy is only in chancery, unless it is given by the act before referred to, and if it is the requirements prescribed by the act, (it being one in derogation of the common law) must be strictly complied with by the holder—i. e. an affidavit of loss of the accepted part, must be made before the issuance of the writ.

3. It follows, if an affidavit of the loss was necessary, that

there should be an allegation in the declaration of the loss, and that an affidavit was duly made. There being no such allegations, the proof recorded in the bill of exceptions, showing loss, was clearly inadmissible. As the plaintiff could legally prove no material fact, which the declaration does not alledge. [Greenl. Pl. 170, § 7.] All the forms of declarations upon lost bills, to be found in the books, contain an averment of the loss. [3 Stewt. 31 ; 7 Ala. 42 ; 3 Cowen, 303 ; 10 Johns. 104.] The loss of the bill and the affidavit, being ingredients of the plaintiff's right of action, must be averred in the declaration. [Clay's Dig. 333, § 112 ; Gould's Pl. 173, § 8.] And not being averred, they could not be proved.

4. The evidence of Pope, that Hutchings & Pearson intended to include this bill as a claim to be secured by the deed of trust, was inadmissible. [3 St. 140, 201 ; Gayle, et al. v. Hudson, et al. 10 Ala. 116.]

But conceding that the statement furnished by the bank to Posey, of the liabilities of Hutchings, was a sufficient presentation to take the case out of the statute of non-claim, still as the facts are, it will not do, for the abstract states that " the bill is payable in New-Orleans," when the bill given in evidence shows that it was not. This variance is fatal.

5. The proof of presentment of the claim within eighteen months was not sufficient. The presentment should have been of the claim itself, or an abstract. It is not enough that the executors knew of the existence of the claim. Nor could he, by his admissions, dispense with the necessity of a proper presentment,

The statute requires that the claim shall be presented, and nothing short of the claim will do. [2 Stewt. 445 ; Jones' ex'rs v. Lightfoot, 10 Ala. R. 17 ; Boggs, adm'r v. Bank Mobile, 10 Ala. 970.]

6. The point raised by the charges asked and refused, is *res integra*, having never been decided expressly, either one way or the other. It is therefore to be decided by the general principles governing the duties and liabilities of holder and indorser. It is very different from the case of an agreement by the holder to give time to the acceptor, in which case there must be a valuable consideration for the contract.

For this is after the liability of the indorser is fixed by presentment and due notice. In this case though, the agreement, which it is insisted, discharged the indorser, took place before the indorser's liability had been fixed, and was connected with the legal steps requisite to convert it from a contingent into an actual liability. Now, what is the contract of the indorser, and what are the duties of the holder ?

" The indorser of a bill undertakes that the drawee will, upon due presentment of the bill to him for acceptance, accept it, and that he will pay the same when it becomes payable, upon due presentment thereof for that purpose." [Story on Bills, 121-2, 370.]

The liability of the indorser is not an absolute, but a conditional one. All the conditions before recited, enter into and constitute p art of the contract between the parties ; and the law imposes the performance of them upon the holder, as conditions precedent to the liability of the indorser. [Story on Bills, 370-1; Musson, et al. v. Lake, 4 How. S. C. R. 262.]

The indorser stands in the light of surety for the acceptor. [3 Kent, 83, 111.] And fraud by the creditor, in relation to the obligation of the surety, will discharge the latter. [Burge on Suretyship, 218.] The suretyship of an indorser is different in its character and incidents, from that of one joint-maker of a promissory note, which he signs as surety for the other. [Smith's Mercantile Law, (Holcombe & Gholson's edition,) 269, 270.]—Where it is expressly held, that the loss of the bill, after it fell due, will not entitle the plaintiff to recover. [272.]

J. S. Kennedy and J. A. Nooe, for the defendant in error made the following points : ·

1. The time from the death of the testator till the grant of letters, and the period of six months after the grant of letters, (during which no action can be brought,) must be deducted from the period relied on as a bar. [Clay's Dig. 192, § 2; 326, § 78; Hutchison, Ex'r v. Tolls, 2 Porter, 44; Houpt v. Adm'r of Shields, 3 Ib. 247; Douglass v. Forrest, 4 Bing, 686; Webster v. Webster, 10 Ves. 73; Hansford v. Elliott, 9 Lee, 79; Hudson v. Hudson, 6 Munf. 352.]

2. The court did not err in refusing to dismiss for want of jurisdiction, on the ground that no affidavit of the loss of the first of exchange and protest thereof, was made before suit was instituted. The bill is not lost so as to come under the description of lost notes, &c. in Clay's Dig. 333, § 112; 382, § 9. Bills are commonly drawn and delivered to the payee, in several parts, called sets of the same bill, any one part of which set being paid, the others are void. [Story on Bills, § 226, 66; Bailey on Bills, ch. 1, § 8, 5 ed. 1830.] The drawer or indorser to be charged on *non*-acceptance, or *non*-payment, is entitled to call for the protest, and the identical bill, or number of the set protested, before he is bound to pay. And it would be sufficient to produce it at the trial, or account for its absence. [3 Kent's Com. 109; Powell v. Roach, 6 Esp. N. P. Rep. 76; Kenworthy v. Hopkins, 1 Johns. Ca. 107; Wells v. Whitehead, 15 Wend. 527.]

3. It was proper to read the second of exchange, prove the loss of the first, and protest after maturity, (accounting for its absence as above,) and prove notice to Hutchings. The fifth count is upon the second of exchange. There was no necessity to alledge the loss of the first of exchange, the set protested. Defendants below had only a right to call for it. And when it was called for, we were bound to account satisfactorily for its absence. [See authorities last cited.] The plaintiff does not seek to recover on the lost set, hence there is no necessity for a count on the part lost.

4. Defendants have no right, by admitting any one fact to deprive us of the right to make all legal and pertinent proof in our power. Testimony which is relevant, cannot be rejected because unaided by other proof, it will not make out the case. The effect of testimony can only be ascertained by a motion to instruct the jury. [Harrell v. Floyd and wife, 3 Ala. 16; Cuthbert v. Newell, 7 Ib. 457; Smith v. Armistead, Ib. 698.] But testimony tending to show that defendant's testator was *indemnified*, is pertinent and relevant to another point in this cause, than that of dispensing with protest and notice.

It has been held, "that if the payee or indorser of a note, or the drawer of a bill, had received money from the maker of a note, or the acceptor of the bill, for the express purpose

of paying it, he has in that case been considered liable to the extent of that money, to be sued for money had and received, although he had no notice of the dishonor." [Chitty on Bills, (ed. 1839,) 482.] "Although a drawer or indorser has been discharged from liability on the bill, in consequence of *laches* of the holder, he may nevertheless be liable in respect to funds that have been specifically advanced to pay the bill. [Ib. 489; Conroy v. Warren, 9 Johns. Cases, 258.] Defendant's testator, by becoming a party to the deed of trust, thereby released the acceptors. [Story on Bills, § 433; Bradford v. Hubbard, 8 Pick. 155.] Indemnity from the principal will bind the surety, though time be given to the principal. [Chilton & Price v. Robins, Paynter & Co. 7 Ala. 120.]

The following authorities show, that the defendant's testator, having "sufficient," or "ample indemnity," is not entitled to protest and notice: Stevenson v. Primrose, 8 Port. 155; Bond v. Farnum, 5 Mass. 173; Baily on Bills, 241; Chitty on Bills, (ed. *sup*.) 473; Story on Bills, § 433, 374; 3 Kent, 113; 12 Wend. 123; 11 Johns. R. 180; French's Ex'r v. Bank Columbia, 4 Cranch, 141. No demand necessary when the indorser is indemnified. [Mechanics Bank v. Griswold, 7 Wend. 165.]

If the acceptors had paid the bill at maturity, they (being accommodation acceptors) could have recovered the amount from Hutchings; he was bound to pay the bill, being indemnified, and having controlled the proceeds, and it matters not with him whether he pays the bank or the acceptors. [Story on Bills, 434, 425; Chitty on Bills, 450 to 454; Sargeant v. Appleton, 6 Mass. 85; Murray v. Judah, 6 Cow. 484; French's Ex'r, &c. *supra*.] If the bill in suit was not one of the bills described in the trust deed, it would have been competent for defendants to have shown the fact. Our proof that it was, is at least *prima facie*.

5. There was no error in permitting W. Pope, jr. the trustee, to identify the bill in suit with the one spoken of in the deed, although imperfectly described. [Duval's Heirs v. McLoskey, 1 Ala. 737; Locket v. Child, 11 Ala. 640.]

6. There was no error in permitting the quit claim deed of Hutchings to Pearson, to be read to the jury. [See authorities under 3.] We may add the general doctrine of es-

toppel—that Hutchings having by deed said that he was sat-
isfactorily secured against his liabilities for Pearson in the
trust deed to Pope as trustee, he nor his representative can-
not gainsay it. This added to the proof that Hutchings or-
dered Camper's debt of $3,000 to be paid, is conclusive to
show that he was amply indemnified.

7. It was proper to permit Compton to prove that Aberna-
thy (our own witness) was mistaken. [Phil. on Ev. Cow.
& Hill's Notes, 309; Winston v. Mosely, 2 Stew. 137.]

8. Presentment of a mere abstract or brief statement of the
nature of the claim is quite sufficient. [Bigger's adm'r v.
Hutchings, 2 Stew. 445; Mardis's adm'r v. Shackelford, 4
Ala. 503; Acre v. Ross, 3 Stew. 288.] A written acknow-
ledgment by an acting executor, that a claim was presented
within the time required by law, is evidence of the fact of
presentment. [Starke & Moore v. Keenan's ex'r, 5 Ala. 590.]
The service of a *scire facias* upon the personal representative
would be a presentation of the claim. [Jones's ex'r v. Light-
foot, 10 Ala. 18.] The commencement and continued pro-
secution of a suit within eighteen months from the grant, is
a presentation of the claim against the estate of a deceased
person, within the meaning of the act. [Henly's ex'r v.
Shufford, 11 Ala. 203.]

9. We contend that the order on the minutes of the bank,
stating that in the event Kirkman, Abernathy & Hanna, failed
to pay the bill at maturity, their credit should not be affected
in bank, did not prejudice the rights of the indorsers—1. Be-
cause the agreement was *nudum pactum* a promise by a cre-
ditor to give time in writing, and the time actually given to
the principal, does not release the surety, if there was no con-
sideration for the promise. [Agee v. Steele, 8 Ala. 948.] An
express agreement not to sue, made after giving notice of
non-payment, being *nudum pactum*, will not discharge the
other parties. [Chitty on Bills, 447, and authorities there
cited.] A gratuitous agreement by the holder of a bill with
the acceptor, made on the last day of grace, to look to him
alone for payment, and not to present the bill, or notify the
drawer, does not relieve the drawer if the protest is made and
notice given. [De Witt v. Bigelow, 11 Ala. 480.] 2. Be-
cause the bank entered into no agreement by which it was

disabled from bringing suit at any time the indorsers might require it. [Chitty on Bills, *ubi supra;* Inge v. Bank of Mobile, 8 Port. 108; Prout v. Decatur Bank, 6 Ala. 309; Shehan v. Hampton, 8 Ala. 942; Chilton & Price v. Robins, Paynter & Co. 4 Ala. 223.] The agreement, *nudum pactum,* as it was, did not encourage the acceptors not to pay the bill, nor did it give time. Must a creditor refuse to extend credit to a principal in order to avoid a release of a surety? 3. Because Hutchings, by becoming a party to the trust deed to Pope, has himself released the acceptors. [Story on Bills, § 433; Bradford v. Hubbard, 8 Pick. 155.] If this agreement could be tortured into a release of the acceptors, it could not affect Hutchings's rights, because, by taking ample security, he became the principal party to the bill, and it can make no difference with him whether he pays the bank or the acceptors: for if they had paid the bill, being accommodation acceptors, they could have recovered the amount from Hutchings or his representative. [Story on Bills, § 434, 425; Chitty on Bills, 450 to 454, 269; Sargent v. Appleton, 6 Mass. 85; Murray v. Judah, 6 Cow. 484.] Parties without funds in the hands of drawees, are not discharged, though time be given, or additional security taken. [Chitty on Bills, 450, side page, and note of Catlet v. Haigh, 3 Campbell, 281.] As to bank refusing to cancel on Pearson's check. "If a bill is negotiated for a particular and special purpose, then the proceeds cannot be applied to a different purpose." [Chitty on Bills, 91, side page, and note of Smith v. Knox.] This will apply to Hutchings's directions to Nelson as to the original design of the parties to the bill as to the application of its proceeds.

DARGAN, J.—The first question arises on the state of the pleadings.

The defendants pleaded the statute of limitations of six years. The plaintiff replied the death of the testator in January, 1841—the grant of letters testamentary to the defendants on the 25th January, 1841—and that deducting the six months after the grant of letters to the defendants, during which they could not be sued, the cause of action has not accrued within six years previous to the issuance of the writ.

To which replication there was a demurrer, and it was over-ruled. This brings up the question, whether the six months, after the grant of letters testamentary, or of administration to the representatives of a decedent, shall be computed, in cal-culating the time necessary to the bar of six years. In the case of Houpt v. Shields, 3 Porter, 247, it was considered as a settled question, that the six months, during which the right to sue was suspended by statute, was not to be compu-ted in calculating the time necessary to form the bar. This was considered as decided by the case of Hutchison v. Tolls, 2 Porter, 44; and the Supreme Court of Mississippi has so decided on a similar statute, in the case of Dowell v. Wilcher, 2 Smede & Marshall, 452. And these decisions seem to be in conformity with reason—that if the right of action is sus-pended by statute for a time, that this time should be deduct-ed, in calculating the time necessary to form the bar.

2. The next question is, whether the debt or claim, was presented to the defendants as executors, within eighteen months. The evidence on this point is, that the bank made out a list of all claims against the defendant's testator; at the foot of which they were informed that the bank looked to them for payment, and the claim sued on was described in this notice, by its date, amount; and also the character that each party bore to the bill, stating that it was payable in New Orleans.

This was amply sufficient. It is not necessary to present to the executor, the piece of paper, on which the bill or note is written; nor would it be necessary to produce the wit-nesses who would prove the claim, if it could be proved on-ly by parol. All that is necessary, is to give him notice of the existence of the debt, and that the holder looks to the estate for payment. [See 10 Ala. Rep. 23; also, Boggs, adm'r, v. The Branch Bank at Mobile, 10 Ala. 970.] So it has been held, that suit brought on a claim within eighteen months, against the representative, is a sufficient presentation. [1 Porter, 359.]

3. The next question we propose to examine, is, as to the correctness of the refusal of the court to charge as requested by defendants.

After the bill was accepted, but before it fell due, the bank

by resolution agreed, that under the peculiar circumstances of this case, the credit of the acceptors should not be impaired in bank, by the protest of the bill for non-payment; and to carry out this agreement, the bill was not sent to the bank in New Orleans, with which they usually did business, but was sent to Martin, Pleasants & Co., who were advised of this agreement; but the defendant's testator had no notice of it. To rebut this proof, the plaintiff offered in evidence a deed executed by P. F. Pearson, for whose benefit the bill was drawn, accepted and endorsed, and to whose credit the proceeds was placed, dated the 17th October, 1838, by which he conveyed to Willis Pope, as trustee, all his stock of goods, accounts, &c., to secure the defendant's testator against all liabilities he had incurred on his account. This deed was signed by the trustee, Pope, and also by the defendant's testator; and by the terms thereof, the said Pope was required, in the first place, to pay all debts from the proceeds of the effects, for which Hutchings was liable, for and on account of the said Pearson; and the testimony of the trustee, Pope, shows, that it was ample to pay the debts of Pearson, on which the defendant's testator was liable; and that he had, under the directions of the testator, paid $3,000, to other debts. Under this proof, the court refused to instruct the jury, that the agreement of the bank, before alluded to, discharged Hutchings as the indorser of the bill.

The contract of an indorser, is, that if the bill be presented, payment demanded, and it be refused, then, on protest for non-payment and notice, he will pay.

The demand of payment is a pre-requisite to his liability, (if it can be made,) and this pre-requisite must be complied with in good faith. An agreement made by a bank, with the acceptor of a bill, before its maturity, that if it be not paid, his credit shall not suffer, will, and should discharge an indorser. The credit of an acceptor, is the security that the indorser has for the payment of the bill. To preserve his credit unimpaired, is a matter of the highest importance to a merchant; he will, and ought to use all just efforts to protect it; but this credit is prostrated at once, if he does not meet his bills. An agreement, therefore, with an acceptor, to protect his credit, although he does not meet his bills, takes

from the indorser his highest security, that the acceptor will pay. This interference with the rights of an indorser, will discharge him from all liability on the bill.

But the question recurs, if the acceptance be made for the mere accommodation of the drawer, and the indorser has received indemnity from the drawer, to pay this bill, will such an agreement discharge the indorser? In the case of Stephenson v. Primrose, 8 Porter, 166, this court said, whenever an indorser receives collateral security, to protect him from his indorsement, and the security, whether it be by way of mortgage, or otherwise, is sufficient for that purpose, the maker's default will fix the liability of the indorser, without demand being made or notice given. So in the case of Chilton v. Robbins, Painter & Co., it was decided, that a security, who was fully indemnified, could not avail himself of the defence that the creditor had given time to the debtor, without his consent, see 4 Ala. Rep. 223; to the same effect see 12 Wend. 123. And in the case of Bradford v. Hubbard, 8 Pick. 155, it was decided, that an indorser who had been fully indemnified, could not maintain an action against an accommodation acceptor.

These authorities show, that an indorser who is indemnified, cannot complain, though no demand be made of the acceptor. This proposition however, has been assailed in the argument of the plaintiff's counsel, and we are referred to the argument of chief justice Gibson, in the case of Kramer v. Sanford, 4 W. & Serg. Rep. 328. He expresses, it is true, strong dislike to the principle, that taking indemnity from the drawer, is a waiver of demand, and notice; but yet concedes, that if money, or effects, is placed in the hands of the indorser to pay the bill, and sufficient to protect him, that there is no necessity for giving him notice. By this admission, he yields the whole question, for the authorities referred to, hold the indorser liable only when he has received full indemnity. And if he has received full indemnity for the purpose of paying the bill, we cannot see what injustice there is in holding him liable to pay it; nor will any prejudice result to him, or injury to this species of securities, from such a principle. Whenever therefore, an indorser has received full indemnity to pay a bill, he stands as an acceptor, bound

to pay the bill, whether it has been presented for payment, or not.

But it is objected that the deed of trust does not specify this bill, and that it was erroneous to permit parol proof to show that this bill was intended to be secured, and was in fact secured, though by an improper description. This is not the law ; the deed does not undertake to specify the debt with certainty, and the rule is well established, that if a mortgage is made to secure a debt, and the debt be improperly described in the mortgage deed, yet as between the parties to it, the actual debt may be shown, and the mortgage will be held as a security for it. [Duval's Heirs v. McLoskey, 1 Ala. Rep. 708.] The court therefore did not err in permitting the witness to testify, that this bill was secured by the deed of trust, nor was it error, under all the evidence, to refuse the charge requested, as the testimony tended to show, that the testator had ample indemnity.

4. The next, and last question we shall notice, is, was it necessary before the suit was brought, to make the affidavit, required by the statute of 1828 ? The proof on this point is, that the bill after protest, was remitted back to the bank, with the protest. It was drawn in sets, first and second. The first only was accepted, and protested, and the cashier of the bank, thinks it was handed to the attorneys of the bank, Rice & Lindsay, for suit ; and it appears they gave their receipt for it ; but they have no knowledge of it, nor are they able to state what has become of it—from this the cashier infers it was lost. Search has been made for it, at every place where it would be likely to be found. On this proof, the plaintiff proceeded to read the second of exchange, and to give secondary evidence of the protest of the first—the protest being lost with the first set. To the admission of this proof, the defendants objected, but the objection was overruled. The statute of 1828, (Clay's Dig. 382) is in the following language : " That when any person may have, or own, or may have had, or owned, any bond, bill, note, agreement, or other instrument in writing, the right, or title to the same, remaining in him, her or them, and the same shall be, or shall have been destroyed, by fire, or lost by accident, such person, or persons, shall be authorized, upon first making

oath in writing, of the loss of such bond, bill, note, agreement, or other instrument, and that the same has not been paid, satisfied, or otherwise discharged, to sue for, and recover the same, at common law."

This statute has received a construction, from which we cannot depart. In the case of the Bank of Mobile v. Tillman, it was decided at the last term, that this statute was cumulative merely; that a plaintiff, notwithstanding this statute, might sue at common law, without making the affidavit, in all cases where he could have sued at common law, before the statute; but if he would sue on any lost instrument at law, since the statute, upon which he could not sue at common law because of the loss, he must first make the affidavit prescribed. It is then necessary to ascertain, if the plaintiffs could have maintained their suit on the evidence, before the passage of this act. If they could, then by the construction given to this act, it may now be done.

It was for a long time an unsettled question in England, whether a suit at law could be maintained on a lost note, or bill, that could be passed from hand to hand by delivery, and on which any holder might sue. But in the case of Hansard v. Robinson, 7 B. & C. Rep. 20, Lord Tenterden, after a thorough examination of the question, determined against the right to sue at law, and from that time, the question seems to be settled in England, and the decision in this case has been adopted by the text writers as unexceptionable. [See Chitty on Bills, 297; Story on Bills, ——.] And these authorities say, it is not material whether the bill was due, or not, at the time of the loss. The same question arose in 3 Cow. 303, and the same rule was maintained, and the court say, that a suit at law, cannot be maintained on a lost note, that is transferable by delivery, and that the only remedy is in equity, and that the rule is the same, whether it lost before, or after due.

Mr. Greenleaf, in his treatise on Evidence, vol. 2, 131, adopts the same rule. I have looked into the authorities, with some wish, to find the rule established to the contrary, but I think I am forced to pronounce, from the weight of authorities, both in England and the United States, that a suit cannot be maintained at law, on a lost bill, or note, that will

pass by delivery, whether lost before, or after due.    The statute, then, not having been complied with, the suit cannot be maintained, for the want of the oath prescribed.    The defendant's counsel, however, has attempted to draw a distinction in this case; he says that the whole bill has not been lost, but only the accepted, and protested part, or set; and that a suit at law can be maintained on the second set, or part which has not been accepted, or protested, on proof of the loss of the accepted part.    I have examined the authorities referred to, and they do not bear out the distinction.    In 1st Johnson's Cases, 107, although the court say, that the plaintiff was not bound to transmit the accepted set, but might retain it, to proceed against the acceptor, and at the same time proceed against the indorser.    It will be seen, that the question arose merely on a question of notice, and the accepted set was remitted back, before the trial, and was produced. (The head note of that case is incorrect.)    And in the case of Wells v. Whitehead, 15 Wend. 528, Nelson, J., reviewed the authorities on this question, and his conclusion is, that the acceptor can require the production of the accepted set, before a recovery can be had against him.

So it is said by Chitty on Bills, 175, 9th edition, that if the holder present an unaccepted part of a bill, and suggests that he has lost the accepted part, that the acceptor may require of him, caution, or security against his liability to pay the accepted part.    From this it appears, that if the accepted part is lost, that an acceptor may demand security, before he is bound to pay.    If the acceptor can demand security, before he is compelled by law to pay, that right of the acceptor is inconsistent with an immediate right of action on the part of the holder; for if the holder could sue at law immediately, without regard to this right of the acceptor, then would the acceptor be bound to pay, without caution, or security.    We are therefore brought to the conclusion, that the court erred in admitting the secondary evidence of the bill, and protest, and the judgment is reversed, and the cause remanded.    It may be, that the bill will be found, or the testimony may establish the destruction of the bill, in either of which events, the affidavit would be unnecessary.