## J. L. WOFFORD et al. *v.* BOARD POLICE OF HOLMES COUNTY.

1. CHANCERY JURISDICTION—MORTGAGE WITH POWER OF SALE.—W., in July, 1860, borrowed a sum of money from D., president of the board of police, and to secure payment, executed to D. in his official character, a deed of trust, on certain lands with power of sale. Part of the money remained unpaid; and in the meantime A. & O., had obtained possession of the land under color of title. *Held:* That D. had a clear right to file his bill in chancery, against W. and sureties, and against A. & O., to enforce a sale of the land, and payment of the amount due him.

2. EFFECT OF SALE BY GRANTEE—EQUITY OF REDEMPTION.—In a mortgage by the grantor to a grantee with power of sale in the latter, an equity of redemption remains with the grantor, which a sale and conveyance of the land by the grantee would not pass. Hence, the right of resorting to chancery in order to subject the entire interest in the land, to the satisfaction of the debt. 1 Barn. & Cresf., 364; 2 Sim. & Sta., 323; 1 Rand., 310.

3. CLOUDS ON TITLE.—A. & O. were in possession of the premises, setting up some claim to them. The creditor had a right to present to bidders at the sale, an estate disembarrassed of all conflicting or pretended claims; and in order that his security might be available, he had a right to bring these parties into court, and to have their claims investigated and clouds removed, so that the estate might bring its full value.

4. LOST NOTE—INDEMNITY AGAINST.—Where resort is had to chancery to compel payment of a bond or note alleged to be lost or destroyed, it is not necessary to tender in the bill indemnity against such bond or note, because the obligor or maker of such instrument cannot, under the statute, be endangered by the subsequent finding thereof.

5. LEGAL REMEDY ON LOST NOTE.—In this state it is held that an action at law can be maintained on a lost note, because by our statute, whoever derives title to it under the payee, takes it subject to all the equities existing between him and the maker.

6. LOST NOTE—AFFIDAVIT OF LOSS—PRACTICE.—Complainant did not accompany his bill with any affidavit of the loss or destruction of the promissory note, and the defendant neglected in his demurrer to make the objection. On demurrer overruled, he had ninety days to file his answer, but failed to make defense within that time; and thereupon a decree *pro confesso* was rendered for the complainant, which the defendant made no application to set aside. These facts are sufficient to sustain the final decree for relief; the solemn admission indicated by the *pro confesso* of the allegation in the bill that the note had been destroyed by fire, being conclusive between the parties.

Error to the chancery court of Holmes county. HOOKER, J.

The facts are clearly apparent in the assignment of errors, briefs of counsel, and opinion of the court.

Plaintiffs in error assigned the following errors:

1st. There is no offer in the bill to indemnify against the alleged lost note, and the damages and expenses of another suit.

2d. There is no affidavit to the alleged loss or destruction of the note.

3d. It is not stated in the bill that at the time the note was lost or destroyed, it was the property of complainant.

4th. The decree was rendered without a bond being given to indemnify defendants against the note alleged to be lost or destroyed, and the damages or expenses of another suit.

5th. There was no proof to sustain the allegations of the bill.

6th. A decree *pro confesso* was taken on service of process, after demurrer had been filed by the defendants.

7th. There is no equity in the bill.

8th. The demurrers of defendants should have been sustained.

*H. S. Allen*, for plaintiffs in error.

If the note had been "lost or destroyed," it was not the fault of defendants in the bill, and therefore, it was the duty of complainant, to satisfy the court, by his oath, that the note had been "lost or destroyed," and that it was not in his possession or power. Such oath is "indispensable" to sustain the bill in this case. See 1 Story's Eq. Jur., § 88 (5th ed.).

The complainant should have offered in his bill to indemnify against the note alleged to be lost, and the damages and expenses of another suit; and, at least, should have given a bond to indemnify as above, before the court had rendered the decree. See Story's Eq. Jur., §§ 85, 86. And where the complainant does not offer to indemnify, the court will not entertain the bill. Ib., § 85.

There was no proof to sustain the allegation of the "loss or destruction" of the note; this was also indispensable, and the court had no authority to dispense with it. See Story's Eq. Jur., § 88. The remedy to enforce payment of

the note, being complete without the aid of a court of equity, then the loss of the note being the jurisdictional fact for relief in equity, that should have been fully established.

The demurrer should have been sustained, because the complainant had not, by his bill, put himself in a condition to ask assistance of a court of equity. He who would invoke the aid of a court of equity, must do, or offer to do, equity.

This court has fully settled the law in such a case as now at bar. See Truly et al. v. Lane et al., 7 S. & M., 325. The court say: "Jurisdiction was entertained, not only because no profert could be made of the lost instrument, but because the defendants had a right to full indemnity. For the reasons that no offer is made in the bill to indemnify against the note alleged to be lost, and no affidavit to the allegation of the loss, and no bond of indemnity given; and no allegation in the bill that the note was the property of complainant, when lost, and the other reasons given in assignment of errors, the decree ought to be reversed. 27 Miss, 741.

*J. S. Morris*, for defendants in error.

In this case a bill was filed in the chancery court of Holmes county, by the board of police of that county against defendants, to foreclose a mortgage upon certain lands described in the bill and exhibits. The defendants appeared and each and severally filed a general demurrer to the bill, "for want of equity on its face." No special cause of demurrer or exception to the bill appears in the record.

The demurrer was overruled, November 7th, 1868, and defendants allowed ninety days within which to answer. On the 11th of November, 1869, no answer having been filed, and no defense offered, a decree *pro confesso* was taken, and an account ordered to be taken and stated by a commissioner, as prayed for in the bill. The account was accordingly taken and stated, reported and confirmed by the court. The amount found due to complainant, by virtue of the facts and premises contained in the bill, was $1,279 23,

which, by the final decree, defendants were ordered to pay in sixty days, or that the mortgaged premises should be sold.

There was no motion to set aside the decree *pro confesso* or the final decree, and no exception to the report of the commissioner, or to any of the proceedings after the general demurrer was overruled.

There was no answer, no plea, no denial of any allegations of the bill, no bill of exceptions, no appeal, and no bond or security for *supersedeas*, or for costs.

But the case is brought to this court on what purports to be a writ of error, issued by the clerk of the chancery court on his own motion, and on his own responsibility—there being in the record no petition or other application on behalf of any of the defendants for the removal of the cause to this court, by writ of error or otherwise.

In this court the counsel for plaintiff in error has filed assignment of errors and brief, in which, for the first time in the history of the cause, it is complained that the bill of complaint was not sworn to; was not accompanied by any affidavit of the loss by fire of a certain promissory note referred to in the bill as being so lost; and that the bill contains no tender of indemnity to defendants against another suit on said note in case it be not really destroyed, and that the overruling of the general demurrer is not recited or referred to in the decree *pro confesso.*

On the part of the state, it will be sufficient to observe—

1st. That there is nothing in the record showing that any of the plaintiffs in error have, or that they have ever claimed, any "meritorious" defense; but on the contrary, all their objections, here and in the court below, are merely technical, and relate to matters of form only, and not to the merits or substance of the bill.

2d. That whatever advantage might have been taken by the defendants by special demurrer on account of the formal and technical defects referred to in the assignment of errors, if they had been assigned as causes for special

demurrer, all such advantage was abandoned and waived; and the defects, if such they were, have been cured by the general demurrer to the whole bill, "for want of equity on its face." And if on special demurrer, these objections to the form of the bill had been found well taken, the complainants would have been allowed to amend their bill. But the general demurrer, assigning no special cause, but challenging the whole bill, upon a want of equity on its face, was alike a waiver of all objection to matters of form, and "an admission of the truth" of all the allegations of fact contained in the bill, whether sworn to or not. Story's Eq. Pl., § 455; Mitford's Eq. Pl., 273; 1 Swanst., 304, note *b*, and cases there cited; Robertson v. Guild, 12 Metc., (Mass.), 323; Conant v. Warren, 6 Gray (Mass.), 562; Graves et al. v. Hull, 27 Miss., 419; Marye v. Dyche, 42 Miss., 379.

3d. A bond of indemnity is an instrument which the board of police of a county was never authorized to give, even in a case in which a private person might be required to give it.

4th. The assumption that this bill was filed to obtain "relief upon a lost note," is a misconception of the fact. It was a bill to foreclose the mortgage marked "Exhibit A;" to have the account stated in chancery between complainant and defendant, Wofford; to determine any equities that might exist, in favor of, or claimed by defendants, Ashcraft and Owen, who were alleged to be in possession of the mortgaged premises; and to obtain a decree for the sale of the mortgaged premises, and an equitable application of the proceeds under the control of the chancellor. It is true, that the instrument marked "Exhibit A," purports in some respects to be a deed of trust; but it is a conveyance directly to the creditor himself, as a security for the payment of money with power of sale, and no middle or third person to act as trustee, and no proviso for the right of equity of redemption. And this is, according to the best authorities, a mortgage with a right of equity of redemption. Clay v. Willis, 1 Barn. & Cres., 364; Wright v. Rose, 2 Sim. & Sta., 323; 1 Randolph, 306.

And in such cases the creditor or any other interested party cannot exercise the power of sale, without the intervention of a court of equity, especially where there have been partial payments, and a balance, principal and interest, still remaining due to the mortgagee. I cannot otherwise so well give the reasons for this rule, as in the language of Chancellor Buckner. He says: "The first position presented, questions the right of the mortagee to sell under a power of sale to himself in the mortgage. The complainants assume that he cannot, and in this opinion I fully concur, both upon principle and authority. A mortgage with a power of sale, is placed in a situation where his duties are in open conflict with his interest, and where the temptation to act unfairly and oppressively is too powerful to be tolerated. He is the trustee of the equity of redemption, with absolute power to dispose of it without reference to the will or interest of the mortgagor (his *cestui que trust*). To permit him to exercise such a power would be to allow him to state his own account, to determine absolutely upon the amount due him, pronounce a decree of sale in his own favor, and act as his own commissioner in the execution of it. He is made the judge in his own case, and under circumstances, too, not very favorable to an impartial decision. In a case of this kind before Lord Eldon, referred to in Powell on Mortgages, editor's notes, page 9, his lordship says: "How can it be right that such a clause should be introduced into a deed under which a party is trustee for himself? It must be recollected that this is a clause not to be acted upon by a middle person, who is to do his duty between the mortgagor and the *cestui que trust*, but the mortgagee is himself made the trustee to do all those acts." Freem. Ch. R., 42. See also 1 Hilliard on Mortg., 131, and cases there collated.

5th. The allegation that the note referred to in the bill has been destroyed by fire, like every other allegation of fact contained in the bill, is by the general demurrer, admitted to be true, and if this allegation be true, where is the necessity or reason for a bond of indemnity against another

suit on that note ? Besides, if it were possible for a county, one of the political divisions of the state, to act fraudulently and in bad faith in respect to suits and lost notes, the statutes of this state have afforded ample protection to the payer of a note to the original payee, without actual notice of assignment or transfer. Rev. Code of 1857, p. 355, art. 2.

6th. The decree *pro confesso* was under a proper state of facts, and no motion was ever made to set it aside. No exception was ever taken in the court below to any of its proceedings. But after the general demurrer was overruled, the defendants maintained a silent and contemptuous indifference to all further proceedings. Their *laches* cannot now be cured by writ of error or appeal.

SIMRALL, J.:

Is there equity in the bill? The security executed by Wofford, conveys the land to J. A. Durden, president of the board of police, in trust, to secure the debt, with power, on default made in the payment, to said Durden, or his successors in office, to make a sale. The security partakes much more of the nature of a mortgage, than a deed in trust. It is a mortgage with a power of sale. And it may admit of grave doubt whether a sale made by the grantee would convey an absolute title. The equity rule is, once a mortgage, always a mortgage. Would a sale made by Durden, free the property in the hands of the purchaser, from the rights and incidents of a mortgage, as respects Wofford, the grantor? Durden could convey no larger interest or estate than was vested in him. If there was remaining in Wofford any right or estate, that interest or estate could not be passed by Durden's deed. It was held in Clay v. Willis, 1 Barn. & Cress., 364; Wright v. Rose, 2 Sim. & Sta., 323, that instruments in all respects like this, were mortgages, and that the grantors had the equity of redemption. It was so declared in Chowning v. Cox et al., 1 Rand., 310. There the conveyance was made by the debtor to the creditor, with power of sale. In reference to the ordinary deeds in trust, when the lands are con-

veyed to a trustee, with a power of sale, it was said, that it was going far enough to uphold sales made under such peremptory securities; but, they were not objectionable, inasmuch as the trustee was indifferent and disinterested between the parties. It was expressly held, that a sale, in that case, did not bar the equity of redemption. The modern cases however seem to hold, that if the right of redemption is not pressed before sale, it comes too late after it. But there is another fact stated in the bill, which made it eminently proper to go into a court of equity. Aschraft and Owens are said to be in the possession of the premises, setting up some sort of claim to them. In order that the security might be fully available, the creditor had a right to bring these parties before the court, so that their rights might be canvassed, and if they discovered a cloud, it might be removed. The creditor had a right to go before bidders, at the sale, with an estate disembarred of all conflicting pretended claims, so as to insure the market value of the property.

The primary purpose of the bill is to foreclose the mortgage (denominated in the pleading, deed in trust), and subject the property to sale for payment of the debt, and not to recover a moneyed decree, founded on a lost or destroyed promissory note. If there be no debt due, of course there can be no foreclosure. As this debt was evidenced by a promissory note, it was necessary that the complainant should produce it, or satisfactorily account for its absence.

But it is insisted that the bill should have tendered indemnity, and the decree secured it to the plaintiff in error. There is an unquestioned jurisdiction in equity to decree the payment of a lost bond, promissory note, or other negotiable instrument. The English authorities go to the length of holding that the relief is exclusively in chancery. Because, the debtor has a right to have delivered up to him the bond or note, and he is entitled to security, as a protection against the hazard and risk of the instrument turning up in the hands of some lucky finder, or other person taking it from him. 1 Story Eq. Jur., §§ 85, 86. The doctrine of the English courts has been followed in some of the states. Row-

ley v. Ball, 3 Cow., 303. Posey v. Decatur Bank, 12 Ala., 802. In others it has been modified. If lost after due, suit may be at law, if before due, it must be in equity. Thayer v. King, 15 Ohio, 242. The same doctrine has been announced in Rhode Island: " If the bill or note has been destroyed, or was unindorsed, or so indorsed as that a third person could not recover upon it." 1 R. I., 401. The revised statute of New York gives an action at law on a lost negotiable note, or bill upon security being made to the adverse party; in Des Artes v. Legget, 16 N. Y., 588, it was held that the statute had no application where the instrument has been destroyed, and that the action may be maintained without indemnity. The reason assigned is, that a destroyed note cannot be in the hands of a *bona fide* holder, or be subsequently transferred to the prejudice of, or hazard of loss by the defendant. So, also, is Hinsdale v. Bank of Orange, 6 Wend., 379. 8 Cow., 303. Lord Ellenborough drew a very palpable distinction between the loss and destruction of a security. In the latter case there may be a recovery at law, on proof of contents; but it is very different when a note is. stated to be lost; then if the note was indorsed in blank, and was not overdue, it may have got into the hands of a *bona fide* indorsee for value, who might maintain an action upon it against the maker. He declared that for a court of law to require indemnity was contrary to the principles upon which our judicial system rests. But, if the plaintiff can neither produce the note or bill, nor prove that it has been destroyed, he ought to resort to a court of equity for relief. Pierson v. Hutchinson, 2 Camp., 212; also, Myer v. Johnson & Eaton, 3 Camp., 325; Powell v. Roach, Esp., 77.

In the earlier cases, the reason assigned why the obligee of a lost bond must go into a court of equity, was that there must be *profert* of the instrument, without which the declaration would be defective. In later times, courts of law entertained the suit, and dispensed with *profert*, on the allegation of loss, by time and accident. Reed v. Brookman, T. R., 151;

Totty v. Nesbit, 3 T. R., 153; Cutts v. United States, 1 Gallis R., 69 ; Smith v. Emory, 7 Hal., 53; 6 Cow., 749.

It is laid down in East India Co. v. Boddam, 9 Ves., 460; Piersons v. Hutchinson, 2 Swann, 213; Mosrop v. Eatom, 16 Ves., 433, that the strong argument in favor of the exclusive jurisdiction of equity in respect of lost securities, is that complete justice cannot be ·done to the prayee, without indemnity, should the security be subsequently brought forward by a *bona fide* holder for value.

Prior to Hunsard v. Robinson, 7 B. & C., 20, the question was unsettled, whether the remedy on a lost note or bill of exchange, was exclusively in chancery. In that case Lord Tenderden, after a full examination of the subject, came to the conclusion, that an action would not lie at law. Since that decision Chitty & Story, in their treatise on bills, accept the rule as settled that way; therefore, in Posey & Coffee, executors v. the Decatur Bank, 12 Ala., 819, under a statute allowing an action at law on a lost note, on affidavit of the fact and security given, it was held that the making of this affidavit, was a condition precedent to the right to sue at law. But if the bill has been destroyed, the suit was not maintainable. The reason is, that the statute provided a remedy, where none existed at common law, and therefore, the party availing of it, must bring himself within the terms of the law.

In Clark v. Reed, 12 S. & M., 557, it was held, that a recovery at law can be had on a lost note, because by statute, whoever derives title under the payee, takes subject to all the equities between him and the maker. This decision rests on the idea that it was because the law merchant precluded such defenses and equities in the hands of a remote holder, was the remedy in equity maintained. That tribunal being able to require an indemnity for the maker, which courts of law were inadequate and incompetent to provide.

The judgment of the court is placed upon the single ground that, as our statute allowed the maker to set up the same equities and defenses against a remote indorsee, which he could against the payee, therefore, the reason upon which chancery had exclusive jurisdiction in those states

and countries, where the law merchant prevailed in all its rigor, had no force or existence here. The case is silent on the point of indemnity. None was offered or required, evidently because the statute referred to, was supposed to afford ample protection to the party. Moreover, it would hardly be claimed that a common law court could exact such a bond or security, in the absence of an enabling statute. So far as we have examined, no instance of such a proceeding in a court of law, has come under our notice, except by virtue of a statute.

The doctrine of all the better considered cases is, that if the note or bill has been destroyed (as by fire), then the party may sue at law, because the reason for the indemnity does not exist, inasmuch as the maker cannot, by possibility, be exposed to the risk of a suit on the paper by any other person.

In this case, the defendant, Wofford, (if entitled to it) did not notify the court, by his demurrer, that he found fault with the bill for not offering indemnity, so as to have afforded an opportunity to the complainant to make the tender. He neglected to claim it by plea, or answer, as might have been done, on pain of dismissal of the bill; and, inasmuch as security was for his benefit, he may well be supposed to have waived the objection to the bill.

We are also of opinion (be this as it may) that, as the bill alleges that the note was consumed by fire, it would be useless, and not at all needful, for the future safety of Wofford, to have exacted from the complainant, indemnity.

The remaining objections to the decree, are that the complainant did not accompany his bill with an affidavit of the loss of the note, and offered no proof of the allegations of the bill. As to the last point: The order *pro confesso*, was entered after the expiration of the time allowed for answer. If the record shows that the defendants are in default, for failure to appear, after service of process, or if they neglect to answer in proper time after demurrer overruled; the record discloses all that is necessary to uphold the *pro con-*

*fesso.* The chancery court had ample power, for cause to have opened the *pro confesso*, and let in an answer. No such application was made. We are not disposed to entertain critical objections to the form of the decretal order, when exception to it, or relief against it was not taken or applied for in the court below.

Lastly—Is the failure to file with the bill an affidavit of the loss of the note. The general rule as stated by Story, is, " That the defendant shall have the protection of the affidavit of complainant, of the loss of the instrument, before relief will be granted (it is otherwise when discovery alone is sought)." 1 Story, Eq. Jur., § 82.

The defendant did not specially call the attention of the court, to its absence, and we may infer that it was not presented at the hearing on the demurrer. But the defendant had ninety days after the demurrer was overruled, to put in an answer. Here was a second place to have insisted upon it, as could have been done; yet the defendant admits that he has no plea to offer against the relief, by allowing the bill to be taken for confessed, thereby admitting the allegation to be true, that the note had been consumed in the conflagration of Durden's house. Lord Eldon, in Greenway *ex parte*, 6 Ves., jr., 812, speaking of what he calls the " new doctrine," in courts of law, of dispensing with the profert of a lost bond: " The difficulty about the indemnity did not arise, for there is the finding of the jury, upon the evidence that the note is lost; which is conclusive between the parties." So, also, the solemn admission worked by the *pro confesso* of the averment that the instrument has been destroyed by fire, is conclusive between the parties.

We think, in all the circumstances of this case, the exception for the want of the affidavit (taken most probably for the first time in this court), comes too late, and that we are waranted in holding that it has been waived. We do not wish to be understood as holding that a demurrer to a bill, does not bring into canvass the substantial merits of the bill,

and that upon general demurrer, without special assignment, the "right" of the complainant to the relief sought, is not to be considered and passed upon. The substantial equity of the complainant is the foreclosure of the security for payment of his debt. As a precaution, the defendant could have exacted from him a pledge of his conscience, to the truth of the loss of the note. If he suffers the case to progress to final decree, without pressing this "precaution" upon the complainant and the court, we think he ought to be considered as waiving it.

Let the decree be affirmed.