### IN THE

# SUPREME COURT

#### OF THE

## STATE OF NEW-YORK,

##### IN OCTOBER TERM, 1824, IN THE FORTY-NINTH YEAR OF OUR INDE-PENDENCE.

---

### ROWLEY *against* BALL.

ERROR, from the C. P. of the county of *Monroe*. The cause was originally commenced by *Rowley* against *Ball*, before a Justice of that county, who gave judgment against *Ball*, who appealed to the Common Pleas, where the cause was tried *January* 10th, 1822.

*Rowley* declared against *Ball* upon a promissory note given by the latter to one *William Huxley*, payable to him or bearer, for $30, dated on or about the middle of *June*, 1819, and transferred to the plaintiff; and the declaration averred that the note had since been stolen, lost, or destroyed, or taken from the plaintiff without his consent or knowledge.

Plea, the general issue.

Upon the trial, *J. D. Bailis* testified, that he had seen a note in *Rowley's* possession, purporting to have been given by *Ball*, for $30, dated some time in *June*, 1819. The precise time when it was payable he could not tell ; but recol-

*An action at law cannot be sustained on a negotiable promissory note payable to bearer, by the holder, on his proving that the note was lost, though he shew that he lost it after it became due. His only remedy is in a court of equity, which alone can afford the defendant adequate protection against future liability. But if he shew that the note was, in fact, destroyed he may recover in a court of law.*

*So, if the note be not negotiable, or if negotiable, and it appear not to have been negotiated.*

*What is sufficient proof of the execution of a lost note.*

ALBANY,
October, 1824.

Rowley
v.
Ball.

lected that it was payable to *William Huxley* or bearer, and when he saw the note, which was in *April*, 1821, it was due. It was admitted by *Rowley's* counsel, that *Ball* could neither read nor write, but signed by his mark ; and that there was no subscribing witness to the note. *Rowley*, the appellee, swore, `that he put the note into his pocket-book, and sometime after made diligent search for it, both in his pocket-book and desk, but could not find it; that the note was either lost, stolen, or destroyed ; that he had reason to believe that the note had been taken from his pocket-book, and given to *Ball* ; for the story of his having lost the note came to him from *Ball's*, before he knew or suspected the loss. On being cross-examined, he stated that it was first suggested to him that the note was lost by *Samuel Darling*, his own brother-in-law. *Hiram Huxley* swore that he came to *Ball's* in company with his brother, *John Huxley*, who told *Ball* that he had a note against him, which was given to *Wm. Huxley*. *Ball* replied, that whoever held the notes must pay for keeping *Wm. Huxley's* wife; but requested *John Huxley* to take a gun of him, and apply it on the notes ; and it was agreed between them, that *J. Huxley* should take the gun upon trial, and, if he liked it, he should allow $14 on the notes. If he did not like it, he was to return it. *John Huxley* testified, that he received of *Wm. Huxley* two notes against *Ball*, in the state of *Ohio*, one for $30, and one for $20, as they were read to him ; that he could neither read nor write ; that he went to *Ball's*, as stated by *H. Hux-ley*, in company with him, and told *Ball* that he had notes against him, which were given to *Wm. Huxley*, one for $30 and one for $20, and he answered, that whoever held the notes must pay him for keeping *Wm. Huxley's* wife. The witness requested *Ball* to pay him some money ; but *Ball* said he could not. He then requested him to let the witness have some leather ; but *Ball* answered, that he had none to spare. The conversation then followed about the gun, as stated by *H. Huxley*. The witness took the gun, but afterwards returned it, and sold the $30 note to one *Clarke*.

The counsel for *Ball* insisted, that he ought not to be put upon his defence, till *Rowley* had proved the actual destruc-

tion of the note. The counsel for *Rowley* insisted, that there was already sufficient evidence of the destruction of the note, or, at least, sufficient to entitle him to go to the jury, upon the ground that he had proved the loss of the note after it fell due. This was opposed by *Ball's* counsel; and,

The Judges gave their opinion, that the several matters proved and given in evidence, were not sufficient to entitle *Rowley's* counsel to go to the jury, inasmuch as an actual destruction of the note had not been proved; that *Rowley* could not recover on a negotiable note, although it was lost after it became due, unless this was followed by proof of its destruction; and gave judgment of nonsuit. To this opinion, *Rowley's* counsel excepted; and the cause came to this Court upon a bill of exceptions, containing the above matters.

*A Samson*, for the plaintiff in error, briefly stated the case, and cited *Pintard* v. *Tackington*, (10 *John. Rep.* 104) *Chit. on Bills, Phil. ed.* 202; *Marius on Bills*, 19; *Maxwell on Bills*, 136; *Meeker* v. *Jackson*, (3 *Yeates' Rep.* 442) 2 *Campb. Rep.* 214, note to *Pierson* v. *Hutchinson; Freeman* v. *Boynton*, (7 *Mass. Rep.* 483, 486, *per Parker, J.*) *Brown* v. *Messiter*, (3 *M. & S.* 281) *Anderson* v. *Robson*, (2 *Bay's Rep.* 495.) These authorities, he said, supported the position that an action may be sustained on a lost note, though negotiable, if lost when over due.

At any rate, the Court below erred in not suffering the plaintiff below to go to the jury, upon the presumption afforded by the circumstances, that the note had been, in fact, destroyed.

*J. Dickson*, contra. The only real question in the Court of Common Pleas was, whether the appellee had a right to go to the jury; though the Court may have given reasons which are not strictly confined to that point. Nor does it appear that the grounds taken by the Court were the only foundation of the nonsuit. There might have been other objections; and, if they appear upon the case, we certainly

have a right to insist upon them, though the Court may have stopped short, and deemed the reasons actually given sufficient. In truth, the Court will perceive that there were other and important reasons. In the first place, the evidence of the execution of the note was altogether insufficient. So was the proof that it had ever been transferred to the plaintiff. (*Shaver* v. *Ehle*, 16 *John.* 201.) And more than this, *J. Huxley*, who transferred the note to *Clarke*, was interested. (*id.*) Both these considerations might have entered into the decision given by the Common Pleas; and, at any rate, we have a right to the benefit of them here.

No action, however, will lie on a promissory negotiable note, lost, but not destroyed. If the note were lost before it fell due, there could be no question on the subject; and we contend that its being due can make no difference. True, in an old edition of *Chitty*, it is said that an action will lie in the latter case; and the same remark is repeated in the *Philadelphia* edition; but that author refers to cases in its support, which have been overruled. (*Chit. on Bills*, 195 to 205, *Phil. ed.*) He is overruled by *Pierson* v. *Hutchinson*, (2 *Campb. Rep.* 211. 6 *Esp. Rep.* 126. S. C.) *Mayor* v. *Johnson*, (3 *Campb. Rep.* 324; *and vid. Bayley.* 169. *Chit. on Bills, Phil. ed.* 484-5.) The case of *Davis* v. *Dodd*, (4 *Taunt.* 602,) is also against this action; and *Poole* v. *Smith*, (*Holt's N. P. Rep.* 144,) is in-point. The bill there was lost after it was due, from the pocket of the attorney's clerk, a few days only before the trial; and the action was fully sustained by all the requisite proof; yet, as the bill was negotiable; and did not appear to have been destroyed, the plaintiff was nonsuited. This case is also sustained by several authorities cited in a note, (*id.* 145.)

But suppose the action will lie, it cannot be sustained without a previous offer of an indemnity against the note. That the note was due, and, therefore, subject to all the equities between the original parties, or that an action upon it is defeasible by the defendant's proving the loss, are neither of them sufficient answers to this objection. *Chitty*, (*vid. Phil. ed.* 197, 200) lays down his doctrine with this qualification, in relation to a note transferable by delivery, though it be lost when over due.

But, in any event, we say, the remedy is in Equity alone; and should, from the very nature of the subject, be confined exclusively to the Court of Chancery. It is so upon authority; for, most obviously, Equity would not relieve, if a remedy could be had at law. This is the distinction upon which a Court of Chancery rests its jurisdiction. The following authorities sustain both these positions. (*Walmsley* v. *Child*, 1 *Ves. Sen.* 341. 1 *Fonb. Eq.* 17. *Ex parte Greenway*, 6 *Ves. Jun.* 812.) In the last case, speaking of the very point under consideration, the Ld. Chancellor says, "There must be a complete indemnity going to all the consequences against the holder, if the bill has not been paid; and against any demand that may be made by future possible holders, if it should have been paid. When I was Ch. Justice, I tried an action in the Common Pleas, upon a bill alleged to be lost; which had been previously lost by the payee. An indemnity was offered by bond, but I nonsuited the plaintiff. The counsel objected strongly upon the offer of indemnity; and it came before the Court upon a motion for a new trial; and there was a long discussion upon the nature of these indemnities in a Court of Law. The Court had not come to a decision upon it when I left them; and I do not know the result. But I could never understand by what authority Courts of Law compelled parties to take the indemnity." The course of practice, on trials at law, will demonstrate the importance of the Ld. Chancellor's remark, that a most full and complete indemnity should be given; which can be effected under the direction of a Court of Equity only. Although the note were negotiated never so long after it is due, all the plaintiff is bound to prove at the trial, is the existence and loss of the note, and that he was the holder. The burthen of shewing when the note was transferred, in order to let in the defence, lies with the defendant. Till the contrary is shewn, the legal intendment would be that the note was transferred before it fell due, in the fair course of trade; and that the plaintiff is a *bona fide* holder. Both the hazard and expense of such testimony should fall on the one who is in fault, the loser of the note. This is one of the consequences of the loss against which, in the language

of the Ld. Chancellor, the party should be indemnified. A Court of Law is not so constituted as to be able to afford such a protection. Their course of proceeding is opposed to it. Chancery alone is a competent forum. The powers of that Court are more ample, and alone can give full and adequate relief. But, at any rate, whether the question belongs to this or the other side of the hall, indemnity must, in all cases, be given. In the principal case, it has not been even offered or intimated.

It is said, this Court have already settled the question against us; but no case goes so far. In *Pintard* v. *Tackington*, (10 *John.* 104,) it did not appear that the note was negotiable; and the Court expressly recognize the authority of *Pierson* v. *Hutchinson*, and *Ex parte Greenway*, upon which we rely; and by which the action was denied upon lost negotiable paper. *Meeker* v. *Jackson*, (3 *Yeates' Rep.* 442,) was not the case of a negotiable note. But, if otherwise, it has no application here. The state of *Pennsylvania* has properly no Court of Chancery, and the Supreme Court of Law has been driven to the necessity of exercising equitable powers. This is sanctioned by a law of that state; and the decision cited was the offspring of this mixed authority. *Brown* v. *Messiter*, (3 *M. & S.* 281,) passed *ex parte*, on a rule to shew cause, which was made absolute before a single Judge, without looking into the authorities. All that *Freeman* v. *Boynton*, (7 *Mass. Rep.* 486,) contains on this head, is a dictum of Mr. Justice *Parker*, remarking that a lost note may be made good by indemnity; without saying that it would be so of a negotiable note, or whether the indemnity is to be taken by a Court of Law or Equity. In *Anderson* v. *Robson*, (2 *Bay*, 495) also, it did not appear that the bill was negotiable, nor was any question made as to the jurisdiction of the Court. The only question was, whether the ·proof of loss was sufficient.

*Samson*, in reply. The gentleman has no right to examine questions here, which were not made in the Court below. The discussion should be confined to the points distinctly made upon the face of the bill of exceptions; and cannot be

extended to the whole merits of the case, either as it appears from the facts in the bill, or might possibly have existed in the Common Pleas. The case was there put upon the ground, alone, that an action is not maintainable upon a lost note, but that this must be followed by evidence that the note was, in fact, destroyed. Such were the points embraced by the application for a non-suit ; and such the points decided by the Court. We hear not a syllable of indemnity. No objection was made on account of its absence. And if such a difficulty had been started, *non constat*, but it would have been immediately obviated by the proof ; or the requisite indemnity produced and given upon the spot. It is sufficient, if it be tendered or given upon the trial.

All the elementary writers agree that an action is maintainable upon a lost promissory note, though it be negotiable ; and it is using too broad a language, to say that the English decisions are opposed to this. In all the cases (with the exception of *Poole* v. *Smith*,) where the action has been denied the note was lost before it fell due, though perhaps that fact does not expressly appear in the report. In *Pierson* v. *Hutchinson*, the plaintiff was non-suited because the destruction of the note did not appear in proof ; and the reason assigned by Ld. *Ellenborough*, in conclusion, is, that the defendant might be compelled to pay the bill a second time. This remark implies that the bill was, in fact, lost before it fell due ; otherwise there would have been no possible obligation to pay. *Poole* v. *Smith*, decided at *nisi prius*, I venture to say, is the only case where a recovery was ever denied upon a bill or note lost when over due. In that case, the bill had been drawn more than 6 years before the trial ; and the proof was wretchedly defective that there was a subsisting debt upon the bill. All the proof of the demand upon the trial was, that it had been shewn to the acceptor after the action was brought, who admitted the acceptance to be his hand writing, but said he was under no obligation to pay, in as much as, between him and the drawer, it had been satisfied by other bills. The Ch. Justice, upon this proof coming out, remarked, generally, that this evidence was not

enough without producing the bill ; but upon the matter be-
ing pressed by the plaintiff's counsel, he concludes, " Upon
the ground of the non-production of the bill, I think I am
called upon to non-suit the plaintiff. The rule is an. ex-
tremely salutary one, and ought not to be relaxed." It is
evident that this case depended on its own special circum-
stances. The demand was a stale one ;. which fortified the
defendant's declaration on its being presented, that it had
been paid. There was enough, independent of the loss, to
show that the plaintiff should be non-suited. In *Powell* v.
*Roche*, (6 *Esp. Rep.* 76,) it was held enough, either to pro-
duce the note or shew it to be lost. In *Davis* v. *Dodd*, the
prominent question was as to the form of the action ;. and
whether the plaintiff should not have gone upon the promise
to give a. new bill. The Court, to be sure, intimate that no
action will lie ; but the remark, as to this, deserves no great-
er weight than the merest *obiter dictum.*

It is true, as remarked, that Courts of Equity give relief ;
and, on compelling the payment of a lost bill or note, they re-
quire an indemnity from the complainant ; but this power to
take an indemnity is not, as supposed, the source of their
jurisdiction. A paper has been lost through accident, which
is a very usual and broad ground of going into a Court of
Chancery ; but it was never denied that a Court of Law
have a concurrent jurisdiction in such cases, provided the
truth can be reached without the aid of the defendant's oath.
This generally becomes necessary in case of loss ; and when
the cause is once in a Court of Chancery, it requires an in-
demnity as an incidental means of making all parties secure.
The question of indemnity is one of form merely ; and de-
pends upon the different manner in which the Courts are
organized, and their different course of proceeding. In the
case before the Court, no indemnity has ever been required.
A recovery would forever conclude against any future ac-
tion upon this note. The possibility that the maker may
not be able to make out a defence on the ground of that re-
covery, would be equally an objection to maintaining any ac-
tion for any cause, and especially upon negotiable paper.
In all cases, the defendant runs the hazard that the plaintiff

may not be an honest holder; and, if so, the first recovery will not avail him against a second. The loss merely varies the mode of getting this link into the chain of proof. *Pierson* v. *Hutchinson* is in point, that a Court of Law have no power to exact an indemnity. If the defendant insists upon one, *he* must go into Chancery himself, provided the plaintiff refuses to give it.

ALBANY,
October, 1824.

Rowley
v.
Ball.

[WOODWORTH, J. It certainly cannot be necessary to pursue the question of indemnity. The defendant should have put himself upon this defect in the Court below.]

[SUTHERLAND, J. It strikes me that the only objection made below, and, of course, the only one which the defendant can properly take here, is, that the action was not sustainable, because the actual destruction of the note was not proved.]

*Samson.* I would then only add, that, to turn the party out of Court, upon the ground that he should have gone to a Court of Equity, would be to deny him all remedy. On filing his bill, he would be told, in the uniform and settled language of the Court of Chancery, that it is beneath the dignity of that Court to interfere in a matter of $30. Such has been the decision of that Court, and such it will of course be again, unless an exception arises, and our reception is to be more favorable on the other side of the hall, from the circumstance of our being sent there by this Court.(*a*)

*Curia*, per WOODWORTH, J. No exception was taken to the proof given as to the execution of the note. Were it necessary, however, to express an opinion, I should consider the evidence, *prima facie*, sufficient. The witness stated to the defendant that he held two notes against him, given to *William Huxley*; one for $30, the other for $20. The defendant, in reply, admitted the notes, and offered to make part payment. The identity of the note to which the confession related, is established with reasonable certainty.

(*a*) *Vid. Mitchell* v. *Tighe*, 1 *Hopkins' Chancery Rep.* 119. *Vredenbergh* v. *Johnson*, id. 112.

The case of *Shaver* v. *Ehle*, (16 *John.* 201) is clearly distinguishable from the present.

The remaining question is, whether an action at law can be sustained on a negotiable promissory note, payable to bearer, by a person who was the holder, on his proving that the note was lost.

If the note had not been negotiable, or, if negotiable, had not, in fact, been negotiated, the plaintiff would be entitled to recover. (*Pintard* v. *Tackington*, 10 *John*. 104.) The cases which have not permitted a recovery at law upon negotiable paper lost, but not destroyed, were those in which the paper had been endorsed before it was lost. (*Pierson* v. *Hutchinson*, 2 *Campb. Rep.* 211. *Ex parte Greenway*, 6 *Ves.* 812.) In this case, the note being payable to bearer, the holder could make out, *prima facie*, a cause of action, and although the note was due at the time it was lost, the maker would be exposed to the hazard of shewing that fact by legal evidence. It would, therefore, seem to be a hard doctrine, which should place the maker in this situation, without requiring an indemnity. In such cases, it is better to leave the party to his remedy in Equity, where a suitable indemnity will be provided against any subsequent recovery. This subject peculiarly belongs to Equity jurisdiction. In *Ex parte Greenway*, Ld. *Eldon* observes, " I never could understand by what authority Courts of law compelled parties to take the indemnity." In *Pierson* v. *Hutchinson*, Ld. *Ellenborough* held, that whether an indemnity be sufficient or insufficient, is a question of which a Court of law cannot judge ; and although there are *dicta*, that, upon the offer of an indemnity, the endorsee of a lost bill may recover at law, they are so contrary to the principles upon which the judicial system rests, he could not venture to proceed upon them. *Chitty*, in his treatise on bills, *p.* 173, *ed.* of 1817, is of opinion, that where the bill has been lost after it became due, there is no reason why the person who lost it should not be permitted to proceed at law, without offering an indemnity, inasmuch as the law would, in such case, secure all the parties to the bill against future liability to a person who becomes the holder of it after it falls due. This is undoubted-

ly correct, provided the maker of the note, or acceptor of the bill, could prove that it came to the hands of the holder after due. If, in the present case, the plaintiff recovers against the defendant, and subsequently a suit is commenced on the note by another, claiming to be a *bona fide* holder, the recovery had would not alone be a sufficient defence. The defendant must also prove the fact, that it was due when it was lost by the present plaintiff. If he could not, then the subsequent holder would recover, on the ground that it did not appear he received the note after it became due.

It is not necessary that the plaintiff should have a remedy at law in such a case. His redress is ample in Equity, where the defendant can be protected against subsequent liability. I have not found any adjudged case on this precise point; but, from the reason of the thing, and the analogy to cases where notes have been lost after they were endorsed, I think the action cannot be sustained, without proving that the note was destroyed.

Judgment affirmed.