Torrey v. Foss.

---

## TORREY *versus* FOSS.

An indorsee may maintain an action against the indorser (payee) of a promissory note, without notice of its dishonor, where the note was made for the accommodation of the *payee,* and *he* agreed to take care of it, although at the time it was made and when it fell due, the maker was indebted to the payee.

Upon a *lost* note the owner may maintain an action at law without furnishing indemnity to the defendant, if it appear at the time of trial that the limitation bar may be interposed to prevent a recovery by any *bona fide* holder.

ON REPORT from *Nisi Prius,* HATHAWAY, J., presiding.

ASSUMPSIT, on two notes of hand signed by Dexter Andrews, and payable to defendant, or his order, at Merchants' Bank, Boston, and by him indorsed.

One note for $487,00 dated Bangor, Oct. 26, 1847, was payable in four months. The other for $400,00, dated Bangor, Dec. 24, 1847, was payable in five months from its date.

This action was commenced on Dec. 19, 1853.

The larger note was produced on the trial. The other note was not produced, and evidence tending to prove its loss was admitted. The plaintiff also produced the certificate of a notary containing a copy of the note alleged to be lost, and that the same was presented at the Merchants' Bank for payment, and was dishonored, and that he notified the indorser.

This protest and notice did not appear to have been made in a manner to charge the indorser. No notice as to the other note was proved.

Plaintiff introduced evidence tending to show that these were accommodation notes, to enable the defendant to raise money, or turn them out where he was owing, and that the maker, in respect to Foss, was not to pay them. It also appeared that the maker at that time had goods of defendant, and the latter was buying stock for him; and that at the time the notes were made, Andrews was owing Foss about $260, and continued to owe him about that sum when the notes were due.

Upon the note produced, Foss had paid $250.

Plaintiff offered to give such indemnity as the defendant's counsel should be satisfied with, or the Court might order at the trial or afterwards, to protect defendant against injury from the loss of the note.

The title of plaintiff to the note was proved, and upon the evidence, it was agreed to submit the case to the decision of the full Court.

*Rowe* and *Bartlett*, for defendant.

1. On the special counts, the action is not maintainable, for as to the Oct. note, notice was not given, and on the Dec. note the proof offered, fails.

2. Nor can the action be sustained on the money count. The defendant was entitled to notice. He had paid on the first note a sum sufficient, added to what the maker owed him, to balance that note. And this was owed to him at the time the note was given, and the sum has remained due ever

since. Chitty on Bills, p. 438 to 444; 7 East, 359; 2 Campb. 503; 16 East, 433; 7 Maine, 126; 10 Peters, 572.

3. The December note is not destroyed, but merely lost or mislaid. It was indorsed in blank. Defendant may be called upon as indorser to pay it again. If compelled to pay it to this plaintiff, he will want it as evidence in a suit against the maker. In such cases, the only remedy is in equity, where suitable indemnity can be enforced and no suit at law lies upon the note as settled in England and New York. *Hansard* v. *Robinson,* 7 B. & Cr. 90; *Ex parte Greenway,* 6 Vesey, jr. 812; *Rowley* v. *Ball,* 3 Cowen, 303; Story on Promissory Notes, § § 106, 112; *Meyer* v. *Johnson,* 3 Campb. 326; Story's Equity, § 82.

A contrary doctrine has been established in Massachusetts which according to the reasoning of the Court arose from the want of a court of equity there. Pennsylvania has followed Massachusetts for a similar reason. In this State, the question is unsettled. As there is here a court of equity having full power, there would seem to be no reason why the doctrine of England and New York should not be adopted.

*Blake,* for plaintiff.

No notice to the defendant was necessary, the notes being made for his accommodation alone, and he was to pay them in any event. One note is here.

The other note is lost or destroyed. Its loss is well established by the proof.

When the note is lost, judgment may be ordered on condition of satisfactory indemnity. Such has been the practice in Massachusetts and Maine. Since 1811 the question has not been raised, but it has been assumed by the profession that an action well lies on a lost or destroyed note, all other things necessary being proved. *Page* v. *Page,* 15 Pick. 369.

Here an offer of indemnity has been made, but really it is unnecessary, as the note is outlawed.

Where there is no danger from a *bona fide* holder, no in-

demnity is needed. *Hinsdale* v. *Miles*, 5 Conn. 331; *Swift* v. *Stevens*, 8 Conn. 431; *Peabody* v. *Dunton & al.* 2 Gal. 351. In Alabama the action at law is maintainable upon a negotiable note merely lost. *Bank of Mobile* v. *Hilman*, 12 Ala. 214. And the same doctrine is recognized in Vermont. *Reynolds* v. *French*, 8 Verm. 85.

TENNEY, J. — As it respects one note, declared upon in this action, no evidence is offered of a demand upon the maker, or notice of its non-payment to the indorser. On the other note in suit, neither the demand upon the maker, nor notice of the dishonor to the defendant as the indorser, appears from the evidence to have been sufficient to hold the latter. But a question in the case is, whether any demand or notice to the defendant was by law required.

The notes were made for the accommodation of the indorser, in order to raise money or to be turned out to his creditors at Bangor, and payable at the Merchants' Bank, in Boston. The maker had no funds in the Merchants' Bank at the time either note became due; or before or since those times. The defendant was to pay the notes, and did pay on one of them the sum of $250, about the time it became payable. No arrangement was at any time made, between the defendant and the maker, that the notes should be paid by the latter, or that it should be his duty so to do, but on the contrary, the defendant always told the maker he would take care of them. It appears, however, that the defendant was buying stock for the maker, who was having goods of him; and there had been no time since the making of the first note, when there was not a balance due to the defendant from the maker of the notes, till the time when these facts were disclosed in his testimony for this case. But it is satisfactorily shown by the evidence, that notwithstanding the fact, that the balance of accounts was in favor of the defendant, during the whole of that time, at the end of which it was a little short of two hundred dollars, it was never the expectation of either, that this balance should be appli-

ed to the payment of the notes, or that it was not fully understood by them, that the means of paying the notes should be furnished by the defendant, aside from such balance.

It was held in *Bicherdike* v. *Bollman*, 1 D. & E., 405, that if the drawer of a bill has no effects, in the hands of the drawee, no notice is necessary. Judges in England have expressed some dissatisfaction, that this exception to the general rule of requiring notice to an indorser, of the dishonor of a bill, should have been made. But it has not been denied to be the established law there, in cases, where the doctrine of that case was applicable, although the principle has been refused to be extended, and has been restricted in some cases.

In the case of *Orr* v. *Maginnis*, 7 East, 359, Lord ELLENBOROUGH sustained the doctrine of *Bicherdike* v. *Bollman*, but remarked, " I shall anxiously resist the further extension of the exception. The case is different where there are no effects of the drawer in the hands of the drawee, at the time, because the drawer must know, that he is drawing on accommodation; but if he have effects at the time, it would be dangerous and inconvenient, merely on account of the shifting of a balance, to hold notice not to be necessary." And in the case of *Rucher* v. *Hiller*, 16 East, 43, the same Judge says, " where the drawer draws his bill, in the *bona fide* expectation of assets in the hands of the drawee, to answer it, it would be carrying the case of *Bicherdike* v. *Bollman*, further than has ever been done, if he were not, at all events, entitled to notice of the dishonor." And he says, in *Claridge* v. *Dalton*, 4 Maule & Selwyn, 226, " even where there are not any funds, if the bill be drawn under such circumstances as may induce the drawer to entertain a reasonable expectation, that the bill will be accepted and paid, the person so drawing is entitled to notice." And LE BLANC, J., in the same case says, " if the bill be drawn in the fair and reasonable expectation, that in the ordinary course of mercantile transactions, it will be accepted or paid

when due, the case does not range itself under that class of cases, of which *Bicherdike* v. *Bollman* was the first.

BALDWIN, J., in *Dickens* v. *Beal*, 10 Peters, 572, regards as well established, the exception to the general rule, " that notice of the dishonor of a bill must be given to the drawer, when he has no funds in the hands of the drawee. But to this exception modifications are recognized, as if the drawer has made or is making a consignment to the drawee, and draws before that consignment comes to hand; if the goods are *in transitu*, but the bill of lading is omitted to be sent to the consignee; if the goods were lost; if the drawer has any funds or property in the hands of the drawee; or there is a fluctuating balance between them in the course of their transactions; or a reasonable expecta-tion that the bill would be paid; or if the drawee has been in the habit of accepting the bills of the drawer, without regard to the state of their accounts, this would be deemed equivalent to effects; or if there was a running account between them; in such cases it is treated as a fair commer-cial transaction, in which the drawer has a reasonable ex-pectation that his bill will be honored, and he is entitled to the same notice as a drawer with funds or authority to draw without funds. But unless he draws under some such circumstances, his drawing without funds, property or au-thority, puts the transaction out of the pale of commercial usage and law; and as he can in nowise suffer by the want of notice of the dishonor of his drafts, that it is deemed a useless form."

Judge STORY, in his Com. on Bills, § 311, lays down the rule, that if a drawer draws a bill, without having funds in the hands of the drawee, or expectation of funds, or any ar-rangement or agreement on the part of the drawee, to accept the bill, he will not be entitled to notice, and will not be discharged by the want of it. But although the drawer has no funds in the hands of the drawee, to meet the bill, yet if he has the right to expect the funds in the hands of the one on whom he draws for that purpose, or if he has the

right to expect the bill to be accepted by the drawee, in consequence of arrangement with him; or if upon taking up the bill, he would be entitled to sue the drawee, as if he be an accommodation drawer for the drawee or payee, or any subsequent indorser, then he is entitled to strict notice of the dishonor.    Notes to § 311.

The same doctrines, which in respect to bills, we have considered, will also apply to negotiable promissory notes; and the duties and obligations, are the same in reference to the non-payment of bills and notes, as they are in cases of non-acceptance of bills.    Story on Bills, § 378.

From the principles, which have been referred to, in the cases cited, it is manifest, that the right of the drawer, that notice of the dishonor of a bill should be given to him, is upon the ground that such are the transactions between him and the drawee or acceptor, that the former has a reasonable expectation that the bill will be accepted and paid by the latter.    But if, on the other hand, it is for the accommodation of the drawer of a bill, or the payee of a promissory note, that the one is accepted and the other is signed by the maker, and it is positively agreed that the bill shall be paid by the drawer, and the note by the payee, after they are indorsed and negotiated, without any reference to a balance of the accounts in favor of the drawee or payee against the acceptor or the maker, the dishonor of the paper is no, more than the one who was bound by the agreement to meet it, by payment, must have known would take place, and the want of notice would in no wise operate to his injury, and the case would fall within that of *Bicherdike* v. *Bollman*, and others of the same class.    In such cases, the reasons for requiring notice, totally fail.

In the case before us, notwithstanding a balance was in the hands of the maker of the notes, by the agreement between him and the defendant, the paper was to be provided for by other means of the defendant, and at no time was it expected that this balance was to be appropriated for the payment, and the case is to be treated as it would be if

nothing was in the maker's hands belonging to him. After the agreement between them, such as the evidence shows that it was, it would have been an absurd expectation on the part of the defendant, that because the maker of the notes was owing him a sum short of two hundred dollars, he should have transmitted funds to the Merchants' Bank, sufficient to meet the two notes which he had signed.

But it is further insisted in defence of the note dated December 24, 1847, that the note not having been produced at the trial, the action cannot be maintained thereon, notwithstanding it was lost after its dishonor, and notwithstanding the plaintiff voluntarily offers indemnity against all injury arising from any call for payment hereafter by one who may be the actual holder of the same. And the defendant invokes the law of England and of the State of New York, that a suit at law cannot be sustained, but that the only remedy is in equity, where proper indemnity may be enforced, though it is admitted at the same time that in Massachusetts it is otherwise.

A question somewhat of this kind was presented to Lord HARDWICKE, sitting in chancery, as reported in 1 Vesey, sen., 344, in the case of *Walmsley* v. *Child*, in which he says, on the subject of lost instruments in writing, " in case of notes, no *oyer* is demanded of them; and proving the contents being sufficient, and nothing standing in the plaintiff's way;" and he refers to a case on a bill of exchange, which was drawn on the defendant, and indorsed in the third place to the plaintiff, by whom the bill was either lost or mislaid, as appeared by the affidavit annexed, and the prayer of the bill was, that the defendant might be decreed to pay the plaintiff the money, as last indorser, according to the acceptance, the plaintiff first giving the defendant security to save him harmless against all former assignments, which was so ordered. And Lord HARDWICKE remarks upon this case, " if the plaintiff could at law prove the contents of his bill, and the indorsement and the loss of it, he might have brought his action at law upon that bill, without com-

ing into this Court; but he was apprehensive the course of trade might stand in his way at law, and therefore came into this Court upon terms, submitting it to the judgment of the Court, whether they were not reasonable."

The case of *Messop* v. *Eaden*, 16 Vesey, 430, was a bill for the payment of a promissory note, which had been cut in two parts, one being produced, and the other alleged to be lost, and offering an indemnity. It was contended in behalf of the plaintiff, *that the mere loss of the instrument,* gave the Court jurisdiction. Sir WILLIAM GRANT, Master of the Rolls, said to them, " your argument is in direct contradiction to that of Lord HARDWICKE, who, in the case of *Walmsley* v. *Child,* assumes that this Court has no jurisdiction, *except for the purpose of ordering indemnity, where indemnity is necessary.* I am very unwilling to turn the plaintiff round, thinking upon the merits, the justice of the case is with him; but at the same time, I am afraid of breaking in upon the rules established as to the jurisdiction of the courts, that where a party can recover at law, he ought not to come into equity." The bill was dismissed.

In *Greenway, ex parte,* 6 Vesey, 812, it was the object of the petitioner to be admitted to prove under a commission of bankruptcy, in respect of a bill of exchange alleged to be lost after indorsement. The affidavits stated that the bill was returned from America, protested, and the ship was captured on her return. Lord Chancellor ELDON said, " to enable you to prove in respect of this bill, there must be a complete indemnity, going to all the consequences against the holder, if the bill has not been paid, and against any demand that may be made by future possible holders, if it should have been paid." And he further remarked, " I could never understand by what authority courts of law compelled parties to take indemnity." The order was made as prayed for, upon giving an indemnity.

The two cases referred to have been treated as opposed to others in England; and among the latter is that decided in 1827, of *Hansard* v. *Robinson,* 7 Barn. & Cres. 90, in

which Lord TENTERDEN, C. J., says, "upon this question, the opinions of Judges, as they are to be found in the cases quoted at the bar, have not been uniform, and cannot be reconciled to each other. Amid conflicting opinions, the proper course is to revert to the principle of these actions on bills of exchange, and pronounce such a decision as best conforms thereto. Now the principle upon which all such actions are founded, is the custom of merchants." "What, then, is the custom in this respect? It is, that the holder of the bill shall present the instrument at maturity to the acceptor, demand payment of its amount, and, upon receipt of the money, deliver up the bill. The acceptor, paying the bill, has the right to the possession of the instrument for his own security, and as his voucher and discharge, *pro tanto*, in his account with the drawer." "As far as regards his voucher and discharge toward the drawer, it will be the same thing, whether the instrument has been destroyed or mislaid. With respect to his own security, against a demand by another holder, there may be a difference." "If the bill should afterwards appear and a suit be brought against him by another holder, * * * * is he to seek for the witnesses to prove the loss, and to prove that the new plaintiff must have obtained it after it became due? Has the holder a right, by his own negligence or misfortune, to cast this burden on the acceptor, even as a punishment for not discharging the bill, on the day it became due? We think the custom of merchants does not authorize us to say that this is the law." "The holder may tender sufficient indemnity to the acceptor, and if it be refused, he may enforce payment thereof in a court of equity."

Mr. Chitty, in his Treatise on Bills, at page 296, (8th Am. ed.) says, "it is now settled, that whether the note or bill was lost before or after it became due, or after actual demand of payment, and an express promise to pay, still that no action at law can, if it were negotiable, be sanctioned, though it has been contended, that a distinction ought to be

taken between an undue and an overdue bill, and that the promise to pay ought to bind."

It is said, in 1 Story's Equity Jurisprudence, § 86, " in the cases which we have been considering, the lost note, or other security, was negotiable. And according to authorities, this circumstance is most material, for otherwise, it would seem, that no indemnity would be necessary, and consequently *no relief could be had in equity.*" " But," it is added, " the propriety of this exception has been somewhat doubted; for the party is entitled, upon payment of such a note or security, to have it delivered up to him as a voucher of its payment and extinguishment, and it may have been assigned in equity to a third person. And although, in such a case, the assignee would be affected by all the equities, as between the original parties, yet the promisor may not always, after a great length of time, be able to establish those equities by competent proof; and, at all events, he may be put to serious expense and trouble to establish his exoneration from the charge."

In Massachusetts, when what is now the State of Maine was a part thereof, it was held, that where notes declared upon in a writ were lost, parol evidence of their contents was competent, (*Jones* v. *Fales,* 5 Mass. 101,) and this may be regarded as the settled law of that Commonwealth and of this State, where the defendant is not exposed to danger from the claim of an actual holder, other than the plaintiff. *Weston* v. *Hight,* 17 Maine, 287.

In New York, where the lost note was not negotiable, or if so, had not been negotiated, the plaintiff would be entitled to recover at law. *Partard* v. *Tuckington,* 10 Johns. 104.

The Court say, in their opinion, in *Rawley* v. *Ball,* 3 Cow. 303, " Chitty in his Treatise on Bills, p. 173, (ed. of 1817,) is of the opinion, that where the bill has been lost after it became due, there is no reason why the person who lost it should not be permitted to proceed at law, without offering indemnity, inasmuch as the law would in such case secure

all the parties to the bill against future liability, and to the person who becomes the holder of it, after it falls due. This is undoubtedly correct, provided the maker of the note or the acceptor of the bill could prove that it came to the hands of the holder after it became due."

The doctrine deducible from the cases in England and in New York, which are regarded as authority upon this subject, is, that as in Massachusetts and in this State, a suit at law may well be maintained, upon negotiable paper, which has been lost after it was indorsed, on proof of its contents, if the defendant is not exposed to a liability to pay a second time to a holder who may afterwards make the claim. And although the bill or note was dishonored before its loss, yet as the party sued may not be able to show that fact, or if he can, he may be put to trouble and expense in doing it, and as the plaintiff's redress is ample in equity, where the defendant can be protected against subsequent liability, it is the only jurisdiction in such a case, which can properly afford security to the defendant, and allow the plaintiff to recover.

Judges in Massachusetts have, from an early period, by *dicta* and practice, shown an inclination to allow a party to recover at law on a lost note, which was negotiable, by a tender of sufficient indemnity. *Freeman & al.* v. *Boynton*, 7 Mass. 483 ; *Donelson* v. *Taylor*, 8 Pick. 390.

In an action upon a note brought in 1815, which had been lost in 1797, it was objected that the note might still be in existence, and be again demanded of the defendants, by a *bona fide* holder. But the Court held, after so great a lapse of time, it was incumbent on the defendants, to show either that the note existed, or that it had been demanded of them ; and that it must be presumed that no demand would be made. *Peabody* v. *Denton*, 2 Gall. 351.

The question was directly decided in Massachusetts, in the case of *Fales* v. *Russell*, 16 Pick. 315, where two negotiable promissory notes of hand, payable to one Calef or order, and indorsed in blank, were stolen before maturity.

The Court assumed that, according to the law as then administered in England and New York, it would be held, that the plaintiff could not recover in a suit at law; but the Chief Justice, in the opinion of the Court, says, "if this rule is adopted for convenience, and is not founded upon principles which exclude the action of a court of law, then it will not apply, where there is no such remedy in chancery." And it is again said, " upon a case like this, where a note has been lost after it was due, it has often been held that a plaintiff is entitled to recover without the note. But the title is in fact the same; the only difference is, that the defendants are exposed to a greater risk in the one case than in the other, because, if lost before it was due, there is no possibility, that it may have been negotiated to a *bona fide* holder, in the ordinary and regular course of business, before it was due." And the plaintiff was allowed to take judgment in the action, by furnishing sufficient and reasonable security.

If the plaintiff was entitled to recover in the case just referred to, upon the filing of reasonable security for the protection against a *bona fide* holder, it is not perceived that any substantial reason existed against the judgment, without the security. As evidence, the security could not make out a stronger case for the plaintiff, and it could not impair the defence, to which the other party was entitled. As Lord ELDON said, he could never understand by what authority courts of law compelled parties to take the indemnity.

But where a long time has elapsed, after the party owning the paper caused it to be presented for payment at its maturity, and soon after lost it, it certainly raises a strong presumption in fact, that it has been destroyed, which in New York has been understood to give jurisdiction to courts of law, as appears by the case cited, of *Rawley* v. *Ball.* And by the authority of *Peabody* v. *Denton,* the burden may properly be upon the defendants, to show that the note existed, or that it had been demanded of them, where they claim to be exonerated, and deny their liability, and at the same time refuse to make payment, on the tender of ample indemnity.

It is proved in this case, by the deposition of Benjamin Thompson, that he was the keeper of the plaintiff's books, attended to his accounts and notes, and had charge of his business generally, and had held this relation to him from Aug. 1847, to the time his deposition was taken; that he knows the handwriting of the maker of the note dated Dec. 24, 1847, for $400, payable in five months after date, and also the indorser of the same, and that the handwriting of Dexter Andrews, the maker, and I. B. Foss, the indorser, are genuine; that the plaintiff was the owner of such note; and that the same was sent to Samuel H. Blake, of Bangor, and he has not since seen it, or had knowledge of its payment. The affidavit of the plaintiff is in the case, that the note was sent to Samuel H. Blake for collection, soon after it became due, and protested. Afterwards he wrote to Blake to return the note to him, which Mr. Blake informed him that he did do, by mail, in a letter to him, but that the letter was never received by him, though he had made diligent search therefor; that he has not seen said note since it was sent to Blake; that he has made much search to find it, but has been unable to do so, and he supposes the same is lost; and the balance, after deducting the indorsement, is unpaid, and is due to him. It is admitted that Mr. Blake has made diligent search for the note heretofore, and mostly at his office, and among his papers, without finding it.

The note is satisfactorily shown by the affidavit of the plaintiff and the evidence, not objected to, to be lost; and the copy of certificate of the notary public who protested the note for non-payment, together with a copy of the note thereto annexed, sufficiently shows its contents.

The writ was dated December 19, 1853, almost six years after the maturity of the note, and although not so long as the time which elapsed in the case of *Peabody* v. *Denton,* yet we are not aware of any principle of law, which will effectually distinguish the two cases.

The defendant must be treated as being *now* protected

against any future liability to a *bona fide* holder, by the statute of limitations, unless he has in some legal manner renewed his promise, which he could have shown, if it had been done. And for this reason his security is as ample, as it would be by a sufficient bond with sureties.

*Defendant defaulted.*