In the Matter of the Application of JACOB C. COOK, as Adminis-
trator, etc., of CLARISSA COOK, Deceased, Respondent, to Obtain
an Order Declaring a Certificate of Deposit Issued by the
NATIONAL SPRAKER BANK OF CANAJOHARIE, N. Y., Appellant, to
Be Null and Void, and the Release, Discharge and Satisfaction
of the Bond Given to Said Bank by JACOB C. COOK and Others
to Secure the Payment of Said Certificate.

*Banking — when the Statute of Limitations begins to run against a certificate of
deposit — the statute authorizing a proceeding to enforce payment, or the cancel-
lation, of a lost certificate of deposit is unconstitutional — right to appeal from
orders made thereunder — power of a court of equity on the giving of a bond to
allow a recovery upon a lost instrument.*

A certificate of deposit by which the bank issuing it agreed to pay the sum
deposited to the order of the depositor, together with interest, if the deposit
was permitted to remain with the bank for six months, does not become due
until it is presented for payment, and, until that time, the Statute of Limita-
tions does not begin to run against the depositor's right to enforce such
certificate.

Chapter 451 of the Laws of 1899, as amended by chapters 171 and 503 of the
Laws of 1901, authorizing a person claiming to be the owner of a certificate of
deposit, which is alleged to have been lost or destroyed, to maintain a pro-
ceeding to enforce payment of such certificate, or, in the event of the peti-
tioner's having given a bond of indemnity to the bank and his having thus
secured payment of the certificate of deposit, to procure an adjudication that
the certificate of deposit is null and void and that the bond be discharged —
which statute does not protect the rights of third parties in the certificate, save
by requiring notice of the application to be published in two newspapers — is
not a statute of limitations, and so far as the statute relates to certificates of
deposit issued before its passage, it is unconstitutional.

A bank against which such a proceeding is instituted is entitled to appeal from
a final order made therein and from the order directing publication.

The right to recover upon a lost instrument upon the giving of indemnity does
not rest upon the statute, but the power to permit such recovery has always
existed in a court of equity.

CHESTER, J., dissented.

APPEAL by The National Spraker Bank of Canajoharie, N. Y.,
from an order of the Supreme Court, made at the Saratoga Special
Term and entered in the office of the clerk of the county of Mont-
gomery on the 13th day of August, 1901, directing publication of
a notice, pursuant to chapter 451 of the Laws of 1899, as amended

by chapters 171 and 503 of the Laws of 1901, and also from an order made at the Montgomery Special Term and entered in the office of the clerk of the county of Montgomery on the 6th day of November, 1902, adjudging a certificate of deposit theretofore issued by said bank to be null and void, and releasing a certain bond given to secure the payment thereof.

This proceeding is taken under chapter 451 of the Laws of 1899, as amended by chapters 171 and 503 of the Laws of 1901.

The statute in question provides that where a certificate of deposit is alleged to have been lost or destroyed, the person claiming to own such certificate of deposit may maintain a proceeding to compel the bank to pay the same, or, if he has given a bond of indemnity to the bank to protect them from liability upon the certificate and thus secured payment of such certificate, to procure an adjudication that the certificate is null and void and that the bond be discharged. The statute does not protect the rights of third persons in the certificate except by requiring the notice of the application to be published in two newspapers once in each week for thirteen consecutive weeks.

The petition is made by Jacob C. Cook, as administrator of the estate of Clarissa Cook, deceased, and shows the following facts: Upon the 10th day of October, 1885, the National Spraker Bank of Canajoharie, N. Y., issued, for value received, to Clarissa Cook, a certificate of deposit, dated on that day, for the sum of $5,400. Thereafter said certificate was lost or destroyed, and the said Clarissa Cook was declared a lunatic, and Jacob Cook, the petitioner, was appointed the committee of her person and estate. As such committee, said Jacob Cook demanded the payment of the said certificate, and the said Cook, together with one Josiah Snell and one Alfred W. Shull, duly made, executed and delivered a bond of indemnity, conditioned to save the bank harmless against all loss from said certificate of deposit. Thereupon the said bank paid the amount of said certificate of deposit to Jacob C. Cook, as the committee of said Clarissa Cook. Thereafter, in 1894, the said Clarissa Cook died, and the petitioner was appointed as administrator of her estate. In January, 1900, Josiah Snell died, and executors were appointed of his will, who were made parties to this proceeding. The prayer of the petitioner is for an order declaring the said certificate null and

void, and for the release of said bond of indemnity and of the obligors thereof, and that for that purpose an order may be made directing the publication of a proper notice, as required by the statute, and that such proceedings may be had as required by law, and an order finally made declaring such certificate null and void.

Notice of this application was duly served upon the bank, and over the objection of the bank an order was made directing the publication of the notice required by the statute above referred to, and thereafter a final order was made declaring said certificate null and void, and releasing said bank from all liability thereon, and canceling any claim the bank might have upon the bond or undertaking given by the said Snell and Shull. From this final order, as well as from the intermediate order which directed the publication of the notice pursuant to the statute, the National Spraker Bank of Canajoharie has appealed to this court.

*Andrew J. Nellis* and *Benjamin F. Spraker*, for the appellant.

*Henry V. Borst* and *W. H. Van Steenbergh*, for the respondent.

SMITH, J. :

The right of the appellant to question this order upon appeal seems apparent. The statute requires the bank to be made a party to the proceedings, and, by the order entered, the security held by the bank has been discharged. Against such an order the bank has a material interest to defend.

Nor need we consider whether this statute was intended to affect past transactions. It will hardly be questioned that it would have such effect unless it took away vested rights. The sole question, therefore, for our consideration is upon the appellant's challenge of the statute as an unauthorized exercise of legislative power.

There is a practical agreement between counsel as to the general rules by which the validity of a statute is to be determined. That the obligation of contracts cannot be impaired is the plain direction of the Federal Constitution (Art. 1, § 10, subd. 1); on the other hand, that a statute of limitations may be prescribed when none before existed, or that an existing statute of limitations may be modified by an act reducing the time within which an action may be brought is not questioned, provided only that a reasonable time

be left after the passage of the act within which an action may be brought. The respondent's claim is to the effect that this statute is in its nature a statute of limitations, while the contention of the appellant is that the statute goes further and impairs the obligation of its contract.

By the certificate of deposit in question the appellant agreed to pay to the order of Clarissa Cook $5,400 with interest if left six months. It is not claimed that this makes a demand note which is due at once or within a reasonable time, so that the Statute of Limitations runs. It has been held, and it must be conceded, that apart from the statute in question this paper might well be held for such a length of time as the holder might choose, during which time it would bear interest, and until the presentation of the same the obligation does not become due, and the Statute of Limitations does not begin to run. (See *Payne* v. *Gardiner*, 29 N. Y. 146; *Cottle* v. *Marine Bank*, 166 id. 58.) In the case last cited, LANDON, J., in writing for the court, speaking of a certificate of deposit, says: " But in this case the paper requires payment upon a specified condition, namely, ' to his (the depositor's) order hereon,' and the demand must correspond with the obligation of payment, and that requires the presentation of the certificate to the bank, properly indorsed, unless the bank should waive the indorsement." If a statute were passed making the bank liable upon such a paper without demand, its effect as a material modification of the contract would hardly be questioned. To add to the contract, as has been attempted by this statute, a requirement that under certain conditions the holder of the paper must present his paper to the bank under penalty of a forfeiture of his contract seems to me no less a modification of the contract made by the parties; and I am unable to see any principle of law upon which the Legislature can be claimed to hold this power to alter a contract made.

This statute has in it no element of a statute of limitations. Upon the publication of the notices as required by the statute, the holder of the certificate is bound to present his certificate to the bank. If he does present the certificate he is not required to receive payment thereon, nor is it declared that it shall become due, from which time the Statute of Limitations begins to run. He is simply required to hold up his hand and say, " I have this certificate,"

and for failure to do this, although he has had no actual notice of the order made, his contract is rescinded, and he has no claim under a contract for which he has paid a full consideration. Nor should the court hesitate to declare this statute void by reason of a single hardship in a particular case. Thousands of certificates are held by women to whom the notice contemplated by the statute would never come, but whose property might be confiscated by unscrupulous assignors who might swear that the certificate had been lost and get from the bank the money that in truth belonged to the real holder of the certificate. The assignee of a certificate might go to Europe for a four months' trip, and come home to find his property confiscated.

The only case cited by the respondent immediately bearing upon the question here argued is the case of *Vance* v. *Vance* (108 U. S. 514). It had been provided by the Civil Code of Louisiana (Art. 354) that the property of a tutor (guardian) was tacitly mortgaged in favor of a minor as security for his administration. The Constitution of Louisiana, adopted in 1868, provided (Art. 123) as follows: " No mortgage or privilege shall hereafter affect third parties unless recorded in the parish where the property to be affected is situated. The tacit mortgages and privileges now existing in this State shall cease to have effect against third persons after the first day of January, eighteen hundred and seventy, unless duly recorded. The General Assembly shall provide by law for the registration of all mortgages and privileges." Upon the 8th day of March, 1869, the Legislature of Louisiana enacted the necessary legislation to carry out the provision of the State Constitution. (See Laws of Louisiana of 1869, chap. 95.) This provision of the Constitution was thereafter challenged by a minor who had become of age on the ground that it took from him a security, thereby impairing the obligation of his contract with his tutor. The United States Supreme Court there held that it in no way destroyed the contract between the minor and the tutor; that it was simply a recording act, making the secret lien void as against those who dealt with the tutor without knowledge thereof, and the court there followed prior authorities in the same court which authorized the enactment of recording acts affecting existing contracts for the protection of *bona fide* purchasers dealing with a party without

knowledge of the secret lien. The act in question, however, is not for the protection of *bona fide* purchasers. The reasoning upon which the constitutional provision in the case cited was justified by the court is in no way applicable to the case at bar. A party has lost the evidence of his right to recover. The penalty to the loser is no greater than if the money itself had been lost. I can find no justification in public necessity for the act in question.

It may be argued that the Code of Civil Procedure (§ 1917) provides for the recovery upon lost paper by a requirement that a bond may be given and that the statute in question is no more an impairment of the obligation of a contract than the statute providing for the recovery upon a lost note. But the right to recover upon a lost instrument upon the giving of indemnity does not rest upon the statute. The right has always existed in a court of equity to provide for the saving of the rights of the owner of a lost instrument *by the giving of indemnity.* In *Rowley* v. *Ball* (3 Cow. 303) the right was recognized in a court of equity, but was denied to a court of law, and the statute was enacted for the sole purpose of giving to a court of law the same power to allow a recovery as existed without the statute in a court of equity. (See 2 R. S. 406, §§ 75, 76; and note of the revisers in 3 R. S. [2d ed.] 738. See also Throop's Code Civ. Proc. [ed. 1880] § 1917, and his note.) The statute in question offers no indemnity to the party whose rights are abrogated. It attempts to divest the owner of such a certificate of his property upon a condition not named in the contract, in clear contravention, as I think, of the rights guaranteed to him by the State and Federal Constitutions.

The question here arises upon a certificate issued before the passage of the statute herein discussed. An entirely different question might arise upon a certificate issued after its passage, upon which it is unnecessary here to express an opinion.

The order should, therefore, be reversed.

All concurred, except CHESTER, J., dissenting; KELLOGG, J., not voting.

Final order reversed, with costs.